688 A.2d 496

**BALTIMORE GAS AND ELECTRIC COMPANY**

v.

**COMMERCIAL UNION INSURANCE COMPANY, et al.**

No. 671, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Feb. 4, 1997.

**544**

Ronald D. Byrd and Stephen J. Rosasco, Baltimore, for Appellant.

M. Bradley Hallwig (Robert H. Bouse, Jr., and Anderson, Coe & King, LLP, on the brief), Baltimore, for Appellees.

Argued before FISCHER and HOLLANDER, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned.

HOLLANDER, Judge.

In this case, we must decide whether an insurer's duty to defend its insured depends entirely upon the claims as originally asserted in the complaint, or whether the plaintiffs' revised allegations, during the course of litigation, may terminate the insurer's duty to defend. We also must determine if the insurer is obligated to indemnify its insured, and whether a subcontractor of the insured breached its contract to provide insurance for the insured.

In February 1991, Michael and Kathleen Corradetti filed suit against Jones Intercable, Inc. ("Jones") for personal injuries suffered after the couple's car fell into a utility pit ("the *Corradetti* suit"). They later amended their suit to include claims for negligence against Baltimore Gas and Electric Company ("BGE"), appellant, Ferguson Trenching Company ("Ferguson"), appellee, and others. Pursuant to a contract with BGE, Ferguson dug the pit into which Mr. Corradetti later drove his car. Ferguson was contractually obligated to obtain a general commercial liability insurance policy to protect both Ferguson and BGE, in connection with Ferguson's work for BGE. That policy, which is central to this dispute, was obtained from Commercial Union Insurance Company ("Commercial"), appellee, through Commercial's issuing company, American Employers Insurance Company ("American"), appellee.

Relying on the terms of the policy, Commercial declined to defend or indemnify BGE in the *Corradetti* suit. Thereafter, BGE instituted a declaratory action in the Circuit Court for Anne Arundel County, seeking a determination of its rights

under the policy. After judgment was entered against BGE in the *Corradetti* suit, the circuit court granted appellees' motions for summary judgment in the declaratory action. It determined that Commercial did not have a duty to defend or indemnify BGE and that Ferguson did not breach its contractual obligation to provide BGE with insurance coverage. This appeal followed, in which BGE presents the following questions.

I. Did the circuit court err in granting Appellees' Motion for Summary Judgment on all issues relating to the indemnification and defense of BGE in the underlying *Corradetti* case?

II. Did the circuit court err in failing to grant Appellant's Motion for Partial Summary Judgment on all issues related to the indemnification and defense of BGE in the underlying *Corradetti* case?

For the reasons that follow, we shall affirm in part and reverse in part.

### Factual Summary

In connection with BGE's installation of underground utilities in Anne Arundel County, BGE and Ferguson entered into a "blanket contract," which extended from June 1, 1989 to May 31, 1991. The agreement specifically required the insurance to cover "excavation" and "subsurface work," and provided that Ferguson assumed all risks of liability for injuries "arising out of or incident to the performance of the work." Further, the contract obligated Ferguson to maintain commercial general liability insurance for the benefit of BGE, listing BGE as an additional insured. Pursuant to the contract, in May 1990 Ferguson excavated the site in issue.

In accordance with the contract, Ferguson obtained insurance coverage from Commercial, through its issuing agent, American.[1] Ferguson was the named insured on the policy,

---

1. We shall hereinafter refer to the two insurance companies collectively as "Commercial."

and an endorsement to the policy named BGE as an additional insured. Under the policy, however, BGE's coverage was limited by several exclusions, which restricted coverage to claims based on negligence by Ferguson and claims that BGE negligently failed to supervise Ferguson.

Between May 21 and May 23, 1990, Ferguson dug a "splicing pit" adjacent to Seamore Street, in Anne Arundel County, based on a request from BGE under the parties' blanket contract. The pit was designed to give BGE access to a power line buried in the ground.

Some months later, in October 1990, the Corradettis visited the home of a friend residing on Seamore Street. As they were leaving, Mr. Corradetti backed his car down the driveway of the home and onto Seamore Street. Unfortunately, he stopped his car partially in the splicing pit. As he got out of his car, he fell into the pit, sustaining serious personal injuries. Although the Corradettis brought suit initially against Jones only, they amended their suit to add claims against BGE, Ferguson, C & P Telephone Company, and Spector Communications, Inc.

BGE advised Commercial of the suit and requested a defense. In September 1992, Commercial refused to defend BGE, asserting that the Corradettis' claim was not covered by Commercial's policy, as it fell within one of the exclusions to BGE's coverage. Consequently, BGE instituted a declaratory action against Commercial, alleging that the insurer was obligated to defend and indemnify BGE in the *Corradetti* case, and that Ferguson breached its contractual obligation to acquire certain insurance for BGE. On March 22, 1993, the court denied BGE's motion for summary judgment, concluding: "I don't think I can resolve this issue without [the *Corradetti* case] being resolved first."

In the meantime, the parties in the *Corradetti* case proceeded with discovery and, on April 12, 1993, the trial court held a hearing on the Corradettis' Motion For Dismissal By Order of Court, which all defendants, except BGE, joined. The motion sought dismissal of 1) all claims by the plaintiffs against all

defendants, except BGE; 2) all cross-claims by Jones against the other defendants; and 3) BGE's cross-claim against Ferguson.

The Corradettis advised the court that they had concluded, based on discovery, that BGE alone was negligent, as it was responsible for the failure to backfill the pit. The plaintiffs further argued that the continued presence of the other defendants would confuse the jury, since "the only person we're going after is BG & E." Although BGE objected, the court granted the motion and dismissed all claims, with prejudice, except the Corradettis' claim against BGE. Thereafter, the Corradettis proceeded to trial and the jury returned a verdict finding BGE liable for negligence. It awarded the Corradettis $500,800.00 in damages.[2]

The jury in the *Corradetti* case found BGE liable for the Corradettis' injuries, based on BGE's own negligence, apparently because of BGE's failure to backfill the splicing pit. The *Corradetti* jury returned the following answer to the single question presented to it on the issue of BGE's conduct:

1. Was the Defendant, the Baltimore Gas & Electric Company, negligent, and did that negligence proximately cause injuries to the Plaintiff, Michael W. Corradetti and his wife, Kathleen Corradetti?

Check: Yes (X) No ( )

On September 15, 1993, the court held a hearing in the declaratory action with regard to Ferguson's motion for summary judgment. Ferguson argued that the court's dismissal of BGE's cross-claim against it acted as res judicata or collateral estoppel of the entire declaratory action. The court concurred and dismissed the declaratory action.

BGE appealed both cases. In the *Corradetti* case, BGE asserted, *inter alia*, that it was not solely responsible for the

---

2. After its cross-claim was dismissed, appellant filed third-party complaints against Ferguson and others, seeking joint tortfeasor contribution as well as tort and contractual indemnity. The trial court dismissed these complaints after the *Corradetti* trial.

condition of the trench, and argued that it should have had an opportunity to establish that others were liable for the accident. We upheld the jury verdict in an unreported opinion, but reversed the dismissal, *with prejudice,* of BGE's cross-claim against Ferguson; we directed the trial court to enter an order of dismissal *without* prejudice. *Baltimore Gas and Electric Co. v. Corradetti,* No. 1493, September Term 1993, 100 Md.App. 788 (filed May 2, 1994). While we determined that BGE was entitled to an opportunity to present evidence on its cross-claim, we rejected BGE's claim that it was entitled to a reversal because it had been prevented from presenting evidence that Ferguson and others were responsible for the Corradettis' injuries. We noted that "the questions of liability and damages as between BG & E and the Coradettis were unaffected by the presence or absence of Ferguson in the suit...." Slip. op. at 9. We reasoned that BGE never proffered any evidence to support its proposed defense, and that BGE's claim as to Ferguson and others was not relevant to the issues in the *Corradetti* suit, because BGE was not attempting to *shift* liability onto Ferguson. Rather, BGE was attempting to *share* liability with Ferguson, and thus BGE was not shielded from liability.

In an unreported opinion in the declaratory action, we concluded that our reversal of the dismissal of BGE's claim against Ferguson "eviscerated" the trial court's dismissal of the declaratory action based on res judicata or collateral estoppel principles. *Baltimore Gas and Electric Co. v. Commercial Union Ins. Co.,* No. 23, September Term, 1994, 101 Md.App. 714 (filed Sept. 19, 1994). Therefore, we remanded the declaratory action for further proceedings.

On remand in the declaratory action, BGE filed a motion for partial summary judgment on the issue of whether Commercial had a duty to defend BGE in the *Corradetti* suit. The court denied this motion, and issued a written opinion and order dated September 19, 1995, concluding that Commercial "had no duty to defend BG & E in the *Corradetti* litigation." The court stated that it had previously found that Ferguson had completed the excavation work on May 25, 1990, and "was

off the job from that point forward." The court thus concluded: "The Plaintiff in *Corradetti* was not injured as a result of Ferguson's omission to fill in the ditch excavated, but rather BG & E's omission." Therefore, the court determined that the Corradettis' claims were not covered by BGE's policy with Commercial.

Thereafter, Ferguson and Commercial moved for summary judgment as to BGE's claims in the declaratory action. They argued that, because the jury had found BGE liable for the Corradettis' injuries, the Corradettis' claim was excluded from coverage under BGE's policy. Ferguson also contended that it had not breached its contract to provide insurance for BGE, because the Corradettis' claim arose from BGE's own negligence in not backfilling the pit, and Ferguson's contract did not require it to obtain insurance to cover BGE's own negligence.

BGE filed another motion for partial summary judgment. It asserted: 1) Commercial had a duty to defend BGE in the *Corradetti* case; 2) Commercial breached its contract by refusing to indemnify BGE for the *Corradetti* judgment; and 3) Ferguson breached its contractual obligation to provide BGE with the requisite insurance coverage.

After the court entertained oral argument on the motions on February 20, 1996, it entered judgment in favor of all defendants. The court stated:

[E]very time I look at this case I come up with the same picture and it—and I have given it an independent look because I think it's clear BG & E is—is in search of some theory by which it can extricate itself from this hole they've got themselves into, financially. But I think that really it's quite clear that this contract was complete except for the work that had to be done by BG & E filling it in. And I think that was clear from the testimony earlier that preceded the trial with the Corradetti matter and which ended up by [the Corradettis] letting all those other people out of the case.

I don't think with that in mind and regardless of whether BGE was found negligent at trial, which of course would exclude it from coverage under the Commercial Union policy, but even excluding that theory, I don't think there's any duty to defend where you—your only claim of having the contract continuing is your own negligence in not terminating it by filling in the hole. They had signed off on Ferguson's work order, they were no longer required to do anything under the contract and the mere fact that BGE didn't do anything to complete the filling of the hole doesn't mean the contract stays open forever so that there would be duty to defend under the policy and I think clearly there's not only a no [sic] duty to indemnify, but there's no duty to defend and I think summary judgment should be granted in favor of Ferguson and Commercial Union and American Employers on all counts.

We shall include additional facts in our discussion of the issues.

### Standard of Review

Md. Rule 2–501 establishes a two part test for summary judgment. "In deciding a motion for summary judgment . . . the trial court must decide whether there is any genuine dispute as to material facts and, if not, whether either party is entitled to judgment as a matter of law." *Bagwell v. Peninsula Regional Med. Ctr.*, 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996). *See also Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Bits "N" Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Tel. Co.*, 97 Md.App. 557, 576–77, 631 A.2d 485 (1993), *cert. denied*, 333 Md. 385, 635 A.2d 425 (1994); *Seaboard Surety Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 242–45, 603 A.2d 1357 (1992). In deciding the motion, however, the court does not resolve disputes of fact. Rather, the court must determine if the parties genuinely dispute any material fact. *Honaker v. W.C. & A.N. Miller Dev. Co.*, 285 Md. 216, 401 A.2d 1013 (1979); *Impala Plati-*

*num, Ltd. v. Impala Sales (U.S.A), Inc.,* 283 Md. 296, 326, 389 A.2d 887 (1978).

To defeat the motion for summary judgment, the party opposing the motion must produce evidence demonstrating that the parties genuinely dispute a material fact. *Scroggins v. Dahne,* 335 Md. 688, 645 A.2d 1160 (1994). Even if the non-moving party demonstrates the existence of a disputed fact, it will not defeat the motion for summary judgment unless the dispute concerns a *material* fact, *i.e.,* a fact that will alter the outcome of the case depending upon how the factfinder resolves the dispute over it. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Keesling v. State,* 288 Md. 579, 583, 420 A.2d 261 (1980); *Miller v. Fairchild Indus.,* 97 Md.App. 324, 340, 629 A.2d 1293 (1993). The non-moving party must present more than "mere general allegations which do not show facts in detail and with precision" to demonstrate the factual dispute and defeat the motion. *Beatty,* 330 Md. at 738, 625 A.2d 1005. Moreover, the court must view the facts in the light most favorable to the non-moving party. *Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980); *Maloney v. Carling Nat'l Breweries, Inc.,* 52 Md.App. 556, 451 A.2d 343 (1982).

We review the trial court's decision to determine whether the court reached the correct legal result. *Beatty,* 330 Md. at 737, 625 A.2d 1005. Appellate courts generally review a grant of summary judgment based only on the grounds relied upon by the trial court. *Blades v. Woods,* 338 Md. 475, 659 A.2d 872 (1995); *Gross v. Sussex, Inc.,* 332 Md. 247, 254 n. 3, 630 A.2d 1156 (1993); *Hoffman v. United Iron and Metal Co.,* 108 Md.App. 117, 671 A.2d 55 (1996).

### Discussion

As this case requires us to interpret both the insurance contract issued to Ferguson and the contract between BGE and Ferguson, we pause to review the principles that guide us in the interpretation of contracts. In Maryland, the law is well settled that an insurance policy is interpreted like any other contract. *Collier v. MD–Individual Practice Ass'n,* 327

Md. 1, 607 A.2d 537 (1992); *National Grange Mut. Ins. Co. v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979); *Aetna Insurance Company v. Aaron*, 112 Md.App. 472, 481–83, 685 A.2d 858 (1996); *Bentz v. Mutual Fire, Marine & Inland Ins. Co.*, 83 Md.App. 524, 575 A.2d 795 (1990). Therefore, Maryland courts do not follow the rule that an insurance policy must be strictly construed against the insurer. *Bausch & Lomb v. Utica Mut. Ins. Co.*, 330 Md. 758, 779, 625 A.2d 1021 (1993); *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766, 556 A.2d 1135 (1989). *See also Hartford Acc. and Indem. Co. v. Scarlett Harbor Assoc. Ltd. Partnership*, 109 Md.App. 217, 290, 674 A.2d 106, *cert. granted*, 343 Md. 334, 681 A.2d 70 (1996).

 "Construction of a contract is, in the first instance, a question of law for the court to resolve." *Shapiro v. Massengill*, 105 Md.App. 743, 754, 661 A.2d 202, *cert. denied*, 341 Md. 28, 668 A.2d 36 (1995). The principal rule in the interpretation of all contracts is to effect the intentions of the parties. *Kasten Constr. Co., Inc. v. Rod Enterprises, Inc.*, 268 Md. 318, 301 A.2d 12 (1973); *McIntyre v. Guild Inc.*, 105 Md.App. 332, 355, 659 A.2d 398 (1995); *Taylor v. Feissner*, 103 Md.App. 356, 653 A.2d 947, *cert. denied*, 339 Md. 355, 663 A.2d 73 (1995). When the language of the contract is clear, the court will presume that the parties intended what they expressed, even if the expression differs from the parties' intentions at the time they created the contract. *Roged, Inc. v. Paglee*, 280 Md. 248, 372 A.2d 1059 (1977); *McIntyre*, 105 Md.App. at 355, 659 A.2d 398; *Shapiro*, 105 Md.App. at 754, 661 A.2d 202; *Bernstein v. Kapneck*, 46 Md.App. 231, 417 A.2d 456 (1980), *aff'd*, 290 Md. 452, 430 A.2d 602 (1981). A contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement. *Bausch & Lomb*, 330 Md. at 758, 625 A.2d 1021; *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 198 A.2d 277 (1964); *see also Marsh v. Loffler Housing Corp.*, 102 Md.App. 116, 648 A.2d 1081 (1994).

With these principles in mind, we turn to an examination of appellant's contentions. Appellant argues that Ferguson breached its contract with BGE by failing to provide the required insurance coverage. It also claims that Commercial was contractually bound to defend BGE in the *Corradetti* case, and that Commercial was obligated to indemnify BGE for the judgment in the *Corradetti* case.

## I. Ferguson's Contractual Duty to Procure Insurance for BGE

■■■ Appellant argues that the blanket contract between the parties required Ferguson to "procure insurance that would have provided coverage for any relevant claim (bodily injury or property damage) that arose out of work done by Ferguson." It maintains that the Corradettis' claims arose out of the work performed by Ferguson, because Ferguson excavated the trench into which Mr. Corradetti fell. Therefore, it asserts that if Commercial's policy does not cover the claims in the *Corradetti* suit, then Ferguson failed to meet its obligation under the contract to provide BGE with the appropriate insurance coverage. Without comment on this issue, the circuit court entered judgment in favor of Ferguson.

The contract between BGE and Ferguson required Ferguson to provide BGE with coverage only for certain potential claims that might be brought against BGE. Whether Ferguson properly performed under the contract depends upon a comparison of the coverage that the contract bound Ferguson to obtain, and the coverage Ferguson provided through the Commercial policy.

According to its contract with BGE, Ferguson was to obtain commercial general liability insurance, and the insurance was to be endorsed:

> Such insurance as afforded by this policy for the benefit of BGE shall be primary as respects any claims, losses, damages, expenses, or liabilities *arising out of work or services for BGE,* and insured hereunder, and any insurance carried

by BGE shall be excess of and noncontributing with insurance afforded by this policy.

(Emphasis added).

Thus, Ferguson was to provide BGE with coverage for potential claims by third parties that were *based on work by Ferguson for BGE*. It is plain that, through the contract, BGE sought to insulate itself from claims grounded on the actions of its subcontractor, over which it would have only supervisory control, but for which BGE could potentially be found derivatively liable. BGE apparently recognized that by contracting with Ferguson to perform work on BGE's behalf, it was assuming the risk of liability if Ferguson's work should result in legal action against it. Thus, BGE sought to shift that risk back to Ferguson, by requiring Ferguson to provide appropriate insurance coverage.

The contract, however, does not require Ferguson to provide BGE with insurance coverage for claims brought against BGE based on BGE's *own* negligence. The contract expressly required Ferguson to carry the coverage for itself, with an endorsement to also cover BGE. While it provides that the coverage is to protect BGE for "claims, losses, damages, expenses, or liabilities arising out of work or services *for BGE*," it does not apply to liabilities arising from work performed *by BGE*.

Under its insurance policy, Commercial agreed to insure Ferguson as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS–COVERAGES A AND B.[3] This insurance applies only to "bodily injury" and

___

3. Coverages A and B specified that, in connection with a suit against Ferguson, Commercial would pay its own expenses, up to $250 in bail bonds, the costs of bonds to release attachments, reasonable expenses

"property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence". The "occurrence" must take place in the "coverage territory". We will have the right and duty to defend any "suit" seeking those damages.

The insurance policy specified that, as an additional insured, BGE was protected only with respect to liability arising out of:

A. "Your work" [Ferguson's] for the additional insured(s) at the location designated above, or

B. Acts or omissions of the additional insured(s) in connection with their general supervision of "your work" at the location shown in the Schedule.

The policy defined "Your work" as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.

As Ferguson was the named insured on the policy, "your work" referred to work performed by Ferguson. Thus, as required by the contract, the policy provided BGE with coverage for claims brought against BGE based on Ferguson's work for BGE. The policy also provided BGE with coverage for claims based on BGE's acts or omissions in supervising Ferguson.

The endorsement also contained the following exclusions limiting coverage:

B. Additional Exclusions. This insurance does not apply to:

\* \* \* \* \* \*

---

incurred by the insured to assist in the suit, all costs "taxed against the insured," and certain interest payments based on the part of a judgment paid by Commercial.

(2) "Bodily injury" or "property damage" occurring after:

(a) All work on the project (other than service, mainte-nance, or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(b) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contrac-tor or subcontractor engaged in performing operations for a principal as a part of the same project.

(3) "Bodily injury" or "property damage" arising out of any act or omission of the additional insured(s) or any of their employees, other than the general supervision of work performed for the additional insured(s) by you.

These exclusions essentially correspond to the section pro-viding coverage; the policy does not cover claims based on actions by BGE, except for its supervision of Ferguson's work. The exclusions also bar coverage for claims occurring after Ferguson completed its work at a site and after Ferguson's work was "put to its intended use...." Arguably, Exclusion (B)(2)(a) breached Ferguson's obligation to provide BGE with adequate insurance, because it may limit BGE's coverage for work done by Ferguson to the period of time that Ferguson actually worked on the site. Yet a claim for negligence could have been brought against BGE for an accident occurring after Ferguson completed its work, but which nonetheless "arose" out of Ferguson's work. If that had been the allega-tion in the *Corradetti* suit, then BGE might have had a viable claim that Ferguson had breached its contract, and was re-sponsible for BGE's damages.

In this case, however, as we discuss, *infra,* after the Corra-dettis dismissed their claims against all parties except BGE, their only remaining claim was based on BGE's own negli-gence, for which Ferguson was not required to insure BGE. Thus, BGE's claim that Ferguson failed to meet its contractu-al obligation is not material. Ferguson never had the obli-gation to protect BGE in an action grounded on BGE's own

negligence. Therefore, Ferguson could not have violated that obligation.

 As the circuit court did not specify the grounds upon which it granted summary judgment in favor of Ferguson, we must assume that it "carefully considered all of the asserted grounds and determined that all or at least enough of them ... were meritorious." *Bond v. NIBCO, Inc.,* 96 Md.App. 127, 133, 623 A.2d 731 (1993). Accordingly, we shall affirm the judgment in favor of Ferguson.

## II. Commercial's Duty to Defend BGE

We must decide whether Commercial had a duty to defend appellant in the *Corradetti* litigation. This decision requires us to resolve two questions: 1) whether Commercial, at the outset of the suit, had a duty to defend BGE in the *Corradetti* suit; 2) even if Commercial originally had a duty to defend, did the actions of the Corradettis in dismissing their claims as to all parties except BGE then relieve Commercial of its obligation to defend BGE?

 The law in Maryland is well settled that an insurer's duty to defend its insured under a liability insurance policy arises when the insured is sued on a claim that is covered, or is potentially covered, by the insurance policy; the duty is ordinarily determined based on the allegations in the suit and the language of the policy. *See Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975). *See also Chantel Assoc. v. Mt. Vernon Fire Ins. Co.,* 338 Md. 131, 656 A.2d 779 (1995); *Aetna Cas. & Sur. Co. v. Cochran,* 337 Md. 98, 651 A.2d 859 (1995); *St. Paul Fire & Marine Ins. v. Pryseski,* 292 Md. 187, 438 A.2d 282 (1981); *Aetna Ins. Co. v. Aaron,* 112 Md.App. 472, 481–83, 685 A.2d 858 (1996); *Reames v. State Farm Fire & Cas. Ins.,* 111 Md.App. 546, 558, 683 A.2d 179 (1996); *Oweiss v. Erie Ins. Exchange,* 67 Md.App. 712, 717, 509 A.2d 711 (1986). Indeed, the Court of Appeals recently held that the duty to defend arises as long as the plaintiff in a tort case alleges an "action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that

allegation may be." *Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 643, 679 A.2d 540 (1996).

In *Brohawn,* 276 Md. 396, 347 A.2d 842, the insurer filed a declaratory judgment seeking a determination that it did not have to defend or indemnify its insured. The insured was sued by employees of a nursing home for alleged assault after she tried to take her grandmother out of the nursing home. The initial complaint by the employees alleged only an intentional assault by the insured, but it was later amended to include a negligence claim. The insurer claimed it had no duty to defend, because intentional torts were expressly excluded from coverage under its policy. The insurer reasoned that because its insured had pled guilty to criminal assault charges based on the incident, she would be found liable for an intentional act, and thus the claim would not be covered by the policy.

The Court disagreed. In explaining the insurer's duty to defend, it said:

> The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy.

*Brohawn,* 276 Md. at 407, 347 A.2d 842 (citations omitted). Thus, the Court held that the insurer had a duty to defend because

> [t]he amended declarations in the personal injury cases here involved, alleging negligence, clearly state claims within the coverage of the policy. While Transamerica may believe that the evidence of the guilty plea would establish that any injuries sustained by [the employees] were the result of intentional acts by Mrs. Brohawn, this belief will not relieve

Transamerica of its duty to defend its insured in suits which allege an unintentional tort covered by the policy.

*Id.* at 408, 347 A.2d 842.

■ Later, in *St. Paul Fire & Marine Ins. v. Pryseski,* 292 Md. 187, 438 A.2d 282 (1981), the Court articulated a two part test for determining the insurer's duty to defend. The Court said:

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

*Pryseski,* 292 Md. at 193, 438 A.2d 282. Subsequent decisions have consistently reaffirmed the *Pryseski* test. *Sheets,* 342 Md. at 643, 679 A.2d 540; *Cochran,* 337 Md. at 103–04, 651 A.2d 859; *Aaron,* slip op. at 8–9; *Lawyers Title Ins. Corp. v. Knopf,* 109 Md.App. 134, 674 A.2d 65, *cert. denied,* 343 Md. 333, 681 A.2d 69 (1996); *Chesapeake Physicians Professional Ass'n v. Home Ins. Co.,* 92 Md.App. 385, 608 A.2d 822 (1992). In addition to examining the insurance policy and the allegations raised by the tort plaintiff, the court may also consider "extrinsic evidence" adduced by the insured to determine if the tort plaintiff's suit is covered by the policy. *Cochran,* 337 Md. at 111, 651 A.2d 859; see also *Sheets,* 342 Md. at 640 n. 2, 679 A.2d 540.

■ The Corradettis' amended complaint against Jones, C & P, Spector, BGE, and Ferguson alleged, in part:

4. That on October 10, 1990, while the Plaintiff was backing his vehicle from a private driveway onto Seamore Street, and while exercising all due care and prudent caution for his own safety, his vehicle fell into an excavation made by the Defendant corporations, by their agents, servants or employees which excavation was created by the

negligent, careless and reckless construction activities of the Defendants, their agents, servants and employees.

5. That said fall and injuries to the Plaintiff occurred by reason of the negligence, carelessness and lack of due care on the part of the Defendants, by their agents, servants or employees in that they: did fail to fully fill-in, grade and level the area of excavation created by construction activities; they did fail to post adequate signs, warnings, barriers, or protection for vehicles and pedestrians traversing the area when they knew, or with the exercise of reasonable care should have known, that the failure to so act would cause a condition hazardous to the public; they did fail to grade the area to level with the existing topography in relationship to road and sidewalk areas; they did create a hazard to motor traffic by causing an excavation adjacent to the road which was at least partially obscured by the improper grading and adjacent vegetation.

These assertions do not specify the particulars of the negligence claim against BGE. Rather, the general allegations include a claim against BGE grounded on derivative liability, based on BGE's failure to supervise its agents, and a claim of liability based on its own conduct. In our view, it is not dispositive that the Corradettis failed to "allege facts which clearly bring the claim within or without the policy coverage," *Brohawn*, 276 Md. at 408, 347 A.2d 842, as " 'any doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured.' " *Chantel*, 338 Md. at 145, 656 A.2d 779 (citation omitted). Indeed, in *Sheets*, the Court recognized that "[t]here is an important difference between the duty to defend a lawsuit that affirmatively makes a claim that falls outside of the coverage of the policy, and the duty to defend a lawsuit that fails to allege the elements of a cause of action that if properly alleged and proven would be within the coverage of the policy." *Sheets*, 342 Md. at 644, 679 A.2d 540. Moreover, the "duty to defend is broader than and different from the duty to pay." *Luppino v. Vigilant Ins. Co.*, 110 Md.App. 372, 381, 677 A.2d 617 (1996). Based on the complaint, we are amply satisfied that there was the potential-

ity for coverage under the Commercial policy. Therefore, at least initially, Commercial had a duty to defend BGE in the *Corradetti* suit.

Ultimately, the Corradettis chose to pursue their claim only against BGE, on the theory that BGE was solely responsible for the occurrence because of its own negligence. At the hearing on the motion to dismiss in the *Corradetti* case, the Corradettis expressly redefined their theory of BGE's liability. The following colloquy between court and counsel illustrates the Corradettis' change in position.

**Counsel for C & P:** Your Honor, as you're already familiar with this case, it involves an accident where the Plaintiff backed into a pit, and the Plaintiff, through various complaints, ended up with an amended complaint against five defendants, all of whom are represented here today.

> \* \* \* \* \* \*

Discovery as to liability, in my mind, has led to a point where C & P and the other Defendants, with the exception of BG & E, should be dismissed from the case. I submitted on Friday, a motion for dismissal pursuant to 2–506(b), because under 2–506(a), all defendants—all parties to the case must agree to the dismissal.

> \* \* \* \* \* \*

Plaintiff, obviously, has reached a point where he is willing to dismiss all Defendants except BG & E, because the facts are clear that the splicing pit into which the Plaintiff fell was, although dug by a subcontractor of BG & E, there was no connection at all between the splicing pit and C & P Telephone Company or the other two TV cable companies, Jones and Spector. . . .

So, I'm speaking, obviously, on behalf of C & P, but I know that the Plaintiff's counsel believes it's clear that the TV communications people are also without liability; and although Ferguson Trenching dug the pit, I believe [Fergu-

son's counsel] will argue that there's no liability with regard to that Defendant, as well.

\* \* \* \* \* \*

**Counsel for Ferguson:** [T]he part of this case that's at issue is who had the responsibility to fill [the pit] in, and I urge counsel to tell me where there's a witness that can connect either C & P, any of the cable companies, or Ferguson Trenching with the responsibility, the duty to fill in that pit, sir. I think—and I think [the Corradettis counsel], who is a very able Plaintiff's counsel, as Your Honor well knows, has done this. He has looked at it, he's taken the depositions, and he is perfectly willing to let all these Defendants go except BG & E.

\* \* \* \* \* \*

**Counsel for Spector:** Well, very briefly, I would have to take all the arguments by [C & P] and [Ferguson]. The uncontradicted evidence is, and they produced that BG & E man. Ferguson said, "I dug it for BGE at their request," the splicing pit. That's the only things that—is at issue. He said he put the rebars around it and the tape, thereafter he was through and so notified BG & E. The BG & E witness clearly says, "It's our, BG & E's, responsibility to take care of that pit, fill it in," and they said the cable companies and the C & P, they're through. . . . .

\* \* \* \* \* \*

**Counsel for Jones:** I can only add to what [counsel for Spector] has already said. . . . And if there were any other evidence that could be produced, it would have been certainly produced by now. So here we are on the eve of trial, they're protesting we shouldn't be let out, but there has—I don't understand what the inference is or the—evidence that—that can be obtained against at least the cable companies could amount to, because it has not been produced, it can't be produced.

**Counsel for the Corradettis:** Your Honor, I'm always willing to sue as many rich Defendants as I can find, and in

this instance, I must agree with all counsel with the exception of course, of [BGE].

More importantly, the reason why [BGE] should fail on this—these representations to the Court.... I think they really should read their answers to interrogatories filed in this case, in which they say that a hole was dug by Ferguson who was responsible for it, and negligently failed to fill it in. And that's all they've ever said as to what the cause of this accident is and who's responsible for it.

They have yet to identify the first additional party that had any responsibilities for filling in that hole except their allegation that it was Ferguson; but, lo and behold, their own records show that they had a contract with Ferguson to dig the hole, and they paid Ferguson at that point, and never commissioned him to close the hole, at all. And, in fact, when it was closed some seven, eight months later, it was filled in by another subcontractor.

And there's absolutely no indication anywhere in the meantime that anybody is in this hole for any reason except BG & E, and their own worker or administrative person suggests that the hole was dug and they simply forgot about it, and that's the problem here.

And there's no other evidence that they bring forward to show that anyone else is responsible for the hole, or that anyone else was in it. And if that exists by way of proof, they haven't provided it to me, or I wouldn't be agreeing to this dismissal.

So the only evidence I have is to the effect that the hole was created by them for their purposes and—and that's the end of the ballgame, as far as I'm concerned. And I can't show another person responsible at all. So I think it just clouds the issue, creates a lot of traffic in the courtroom when the case is tried, and the only person we're going after is BG & E.

As we noted, the policy does not cover a claim based on BGE's own negligence. The question, then, is whether the insurer's duty to defend continued even after the Corradettis

dismissed their claims against all parties except BGE. Appellant steadfastly maintains that Commercial had a continuing duty to defend BGE, regardless of the Corradettis' subsequent dismissal of their case against Ferguson and the other parties. BGE argues that 1) the Corradettis' amended complaint alleges negligence against BGE, and 2) Commercial's policy covers BGE for bodily injury or property damage that BGE becomes legally obligated to pay, based on an incident occurring within the coverage period of the policy.[4] Appellant also cites the *Pryseski* test, and argues that to determine whether a suit against the insured is potentially covered by the policy, the court must look exclusively at the insurance policy, the complaint of the tort plaintiff, and any extrinsic evidence adduced by the *insured* that may bring the claim within the policy.

Appellees argue, however, that the Corradettis' dismissal of their claims against the other defendants is evidence that the remaining claim against BGE is not covered by the policy, thereby vitiating the duty to defend. They reason that because the plaintiff elected to pursue BGE based on its own negligence, there is no potentiality of coverage, since the policy does not cover BGE for its own negligence. Appellees asserted, at oral argument, that, in certain circumstances, the insurer is permitted to use "extrinsic evidence" which does not go to the merits of the plaintiff's claim, in order to establish that the claim is not covered under the policy. For example, they contend that if the insured has not paid the premiums for the insurance, the insurer could establish that fact through extrinsic evidence, and thus would not have a duty to defend, even if the claim against the insured otherwise falls within the scope of coverage.

---

4. BGE's argument essentially mirrors what is known as the Exclusive Pleading Rule. For a thorough discussion of that rule, *see Eastern Shore Financial Resources, Ltd. v. Donegal Mut. Ins. Co.*, 84 Md.App. 609, 620–27, 581 A.2d 452 (1990), *criticized* by *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 107, 651 A.2d 859 (1995).

Appellees rely on our opinion in *Mt. Vernon Fire Ins. Co. v. Scottsdale Ins. Co.*, 99 Md.App. 545, 638 A.2d 1196 (1994), *aff'd in part, rev'd in part, sub nom. Chantel Assoc. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779 (1995), to support their claim that they are entitled to present extrinsic evidence on the duty to defend issue, even if it touches on the merits of the Corradettis' suit. There, we said:

> We conclude that these [selected] cases do not abolish the exclusive pleading rule. They merely recognize that the court is not required to play the ostrich when uncontroverted evidence makes it clear that the exclusive pleading rule should not be applied. If there is no dispute about the truth of facts asserted in the "other sources," the court may rely on those undisputed assertions to determine whether there is a duty to defend. If there is a reasonable dispute about the truth of facts asserted in the "other sources," the court must resolve the duty to defend issue by examining the four corners of the complaint and the four corners of the policy.

*Id.* at 563, 638 A.2d 1196 (footnote omitted).

Nevertheless, the Court of Appeals has repeatedly made clear that an insurer may not introduce extrinsic evidence that would take the claim outside the policy's coverage, so long as the *allegations* in the tort suit raise the potentiality of coverage under the policy. *See, e.g., Sheets*, 342 Md. at 640 n. 2, 679 A.2d 540. ("The *insurer* ... may not use [extrinsic] evidence to contest coverage if the allegations in the underlying tort suit sufficiently establish a potentiality of coverage."); *Cochran*, 337 Md. at 107, 651 A.2d 859 ("[W]e have held that an *insurer* may not use extrinsic evidence to contest coverage under an insurance policy if the tort suit complaint establishes a potentiality of coverage ....") (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975)). *See also* 7C J. Appleman, Insurance Law & Practice § 4686, at 172 (Berdal ed. 1979) ("In general, the insurer is not permitted to contradict the allegations contained in a complaint since that will be a matter of proof to be determined during the trial of the underlying negligence action.").

The rule against allowing the insurer to present extrinsic evidence to preclude coverage is supported by the Court's analysis in *Brohawn* that liability insurance is more than just a contract to pay damages when the insured is sued. It is " 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against" the insured. *Brohawn*, 276 Md. at 410, 347 A.2d 842. The rule protects the insured from the requirement of proving to its insurer that the insured is, in fact, liable to the tort plaintiff under a theory covered by the policy, in order to obtain the insurer's assistance in defending the insured against the same allegation.

As we see it, however, appellees have not attempted to introduce extrinsic evidence in order to attack the merits of the Corradettis' claim against BGE, or to establish that the Corradettis would not prevail at trial; that is the type of "extrinsic evidence" that the insurer may not use. *See. Brohawn*, 276 Md. at 408, 347 A.2d 842 (stating that the insurer's belief that the guilty plea entered by its insured would result in a finding of intentional assault not covered by the policy did not relieve the insurer of the obligation to defend). *See also Sheets*, 342 Md. at 640 n. 2, 679 A.2d 540; *Cochran*, 337 Md. at 107, 651 A.2d 859. Rather, appellees attempted to rely upon a change in the Corradettis' *allegations*, which they assert removes the entire suit from the ambit of coverage.

In our view, the plaintiffs' eleventh hour dismissal of claims against all parties except BGE was tantamount to an amendment to the allegations. We conclude that when the plaintiff amends the allegations, the changes in the allegations may be proffered by the insured and considered by the court to determine whether the insurer has a continuing duty to defend. This is because the tort plaintiff's *allegations* are central to the determination of coverage.

Appellant suggests that, in resolving whether there is a duty to defend, the court is to examine only the *complaint*, the policy, and extrinsic evidence adduced by the insured. Therefore, any subsequent change in the allegations would not be probative with respect to the duty to defend. *See, e.g., Sheets,*

342 Md. at 641, 679 A.2d 540 ("Pursuant to the second part of the *Pryseski* inquiry, this Court must look to the Christensens' *complaint* and any extrinsic evidence adduced ....")(emphasis added); *Chantel,* 338 Md. at 142, 656 A.2d 779 ("[A]n insurer's duty to defend is triggered when an examination of the policy, *the complaint* and appropriate extrinsic evidence discloses a potentiality of coverage under the insurance policy.") (emphasis added); *Western World Ins. Co. v. Harford Mut. Ins. Co.,* 784 F.2d 558, 562 (4th Cir.1986) ("The sole controlling factor relating to Harford's duty to defend is whether the allegations contained in [the tort plaintiff's] *complaint* are such that a 'potentiality' of coverage exists.") (applying Maryland law) (emphasis added).

In our view, those opinions that have referred to an examination of *the complaint* have merely utilized a shorthand description for the court's obligation to examine *the allegations* raised in the tort suit. We find support for this view in numerous case, including *Brohawn* and *Pryseski,* in which the Court recognized that the potentiality of coverage under the policy depended upon an examination of *the allegations* raised in the tort suit. *Pryseski,* 292 Md. at 193, 438 A.2d 282 (concluding that the court must determine if *"the allegations* in the tort action potentially bring the tort claim within the policy's coverage[.]") (emphasis added); *Brohawn,* 276 Md. at 407, 347 A.2d 842 ("The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by *the allegations* in the tort actions.") (emphasis added). Recent opinions have made clear that the analysis centers on the actual *allegations* raised by the tort plaintiff, the terms of the policy, and extrinsic evidence, if any. *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 509, 667 A.2d 617 (1995) (stating that the duty to defend is "ordinarily determined by the allegations in the underlying tort action."); *Cochran,* 337 Md. at 104, 651 A.2d 859 ("[W]e must ascertain the scope and limitations of coverage under the Aetna insurance policies and then determine whether the allegations in the [tort] action would potentially be covered under those policies."). *See also*

*Sheets,* 342 Md. at 639, 679 A.2d 540; *Oweiss,* 67 Md.App. at 717, 509 A.2d 711.

In *Brohawn,* the Court examined the allegations of the tort plaintiff and concluded that there was a potentiality of coverage under the policy, based on the *amended pleadings. Brohawn,* 276 Md. at 408, 347 A.2d 842. Because the plaintiffs had added a claim, based on negligence, to their original intentional tort claim, the suit was brought within the coverage of the policy. *Id.* We are persuaded that the converse should also apply; as a result of the changes in the plaintiffs' allegations, the Corradettis' claims against BGE were no longer within the ambit of the policy. *See Oweiss,* 67 Md.App. at 718, 509 A.2d 711 (holding that, as a result of amendments to suit, insurer had a duty to defend, although it did not initially have such a duty based on original allegations); *Steyer v. Westvaco Corp.,* 450 F.Supp. 384, 389 (D.Md.1978) (finding it "implicit" in *Brohawn* that "the [insurance] company is obligated to defend the suit . . . until such time, if ever, that the claims have been limited to ones outside the policy coverage."). *Cf. Eastern Shore Financial Resources, Ltd. v. Donegal Mut. Ins. Co.,* 84 Md.App. 609, 581 A.2d 452 (1990) (affirming summary judgment in favor of an insurer after the tort plaintiff amended his complaint to exclude counts relevant to the insurer and the trial court further found that the defendant was not an insured under the policy).

We also find support for our conclusion in our recent decision in *Reames v. State Farm Fire & Cas. Ins.,* 111 Md.App. 546, 683 A.2d 179 (1996), which makes clear that an insurer's obligation to defend its insured depends upon the allegations that are actually asserted, and not the allegations that *could* be raised based on the facts of the case. In *Reames,* the insureds were sued by their teenaged daughter's former boyfriend. The suit arose out of a physical altercation between the daughter and the boyfriend, after the boyfriend found the daughter in her bedroom with another male. Although the boyfriend had permission to enter the home at will, the daughter filed charges against him for breaking and entering, and assault and battery.

After the boyfriend was found not guilty, he sued the Reameses for malicious prosecution and abuse of process. When their insurer, State Farm, refused to defend the suit, the Reameses sued State Farm in a declaratory judgment action. State Farm claimed that the boyfriend's allegations were not covered by the policy, which provided insurance for an "occurrence" resulting in "bodily injury," defined as physical injury, sickness, or disease, but not including emotional distress, mental anguish, humiliation, mental distress, mental injury, unless arising out of physical injury.

Judge Harrell, writing for the Court, said that State Farm had no duty to defend, because the allegations were not covered by the policy.

> Unasserted causes of action that could potentially have been supported by the factual allegations or the extrinsic evidence cannot form the basis of a duty to defend because they do not demonstrate "a reasonable potential that the issue triggering coverage will be generated at trial." *Cochran*, 337 Md. at 112, 651 A.2d 859. In the instant case, because the complaint, alleging causes of action for malicious prosecution and abuse of process ... failed to demonstrate a reasonable potential that Ms. Reames would face a "claim" or "suit" for damages resulting from an assault and battery, we conclude that the circuit court correctly concluded that appellants could not use this, or any other unasserted cause of action, as a basis for compelling State Farm to provide Ms. Reames a defense.

*Reames*, 111 Md.App. at 561, 683 A.2d 179 (footnotes omitted).

 Similarly, in this case, BGE cannot compel Commercial to provide it with a defense based on claims which, although at one time asserted by the Corradettis, were no longer asserted, because such claims "will not be generated at trial." *Cochran*, 337 Md. at 112, 651 A.2d 859. The fact that the plaintiffs never formally amended their complaint to restate the allegations so as to reflect their revised theory of BGE's liability is of no moment. Their claims were dismissed against all the parties, except BGE. Under these circum-

stances, their actions were the functional equivalent of an amendment of the complaint, and to conclude otherwise would surely exalt form over substance. The plaintiffs' dismissal of all claims against Ferguson, and their argument to the court, made it clear that their remaining claim against BGE was grounded on the premise that BGE was liable only because of its own negligence.

Our view that, in regard to the duty to defend, an insurer may rely on a change in the underlying allegations is in accord with longstanding principles of insurance law. As early as *Lee v. Aetna Cas. & Sur. Co.*, 178 F.2d 750, 753 (2nd Cir.1949), Judge Learned Hand articulated that "if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defense, *until it could confine the claim to a recovery that the policy did not cover.*" (Emphasis added.) *See also Maryland Cas. Co. v. Pearson*, 194 F.2d 284 (2nd Cir.1952); 17 George J. Couch, Insurance Law 2d § 51:48, at 487 (Rev. ed. 1983) ("It has also been stated that if the complaint in the suit brought against the insured does not exclude a basis for recovery for which the insurer is liable, the insurer is obliged to defend his suit *until it can confine the claim to a recovery that the policy does not cover.*") (emphasis added); Appleman, *supra*, § 4684.01, at 100 (the insurer's duty to defend "lasts until a stage of the proceedings is reached at which it is clear that no element of the subject matter of the suit is within the scope of the policy.").

In *Consolidated Underwriters v. Loyd W. Richardson Construction Corp.*, 444 S.W.2d 781 (Tex.Civ.App.1969), an insured sued to recover attorney's fees and expenses incurred in connection with the defense of a lawsuit by the insured's own attorney, after the insurer's attorney obtained permission to withdraw as counsel. In the underlying action, the tort plaintiff had sued the insured for negligently repairing a damaged road. Later, the tort plaintiff amended the complaint, alleging that the repairs in issue had been completed by a certain date.

Since the insurance policy excluded coverage for "work completed," the insurer notified its insured that it was withdrawing from the defense. What the court stated is pertinent here: " '[I]n testing the liability of the insurer to defend, the proof is not material. Liability depends upon the allegations of the plaintiff's petition.' " *Id.* at 784 (quoting *Maryland Cas. Co. v. Moritz,* 138 S.W.2d 1095, 1097 (Tex.Civ.App.1940)). The court noted the " 'distinction between cases in which the merit of the claim is the issue and those where the coverage of the insurance policy is in question.' " *Consolidated Underwriters,* 444 S.W.2d at 784 (quoting *Cook v. Ohio Cas. Ins. Co.,* 418 S.W.2d 712, 715–16 (Tex.Civ.App.1967)). The court determined that, once the suit was amended, the insurer was justified in concluding that the claim was not within the policy and in withdrawing its defense.

This principle has also been restated as settled law in more recent decisions in several jurisdictions. In *Sears, Roebuck and Co. v. Reliance Ins. Co.,* 654 F.2d 494, 496 (7th Cir.1981), the court, although finding that the insurer had a duty to defend its insured, quoted the "well settled rule" in *Lee* and stated:

> The law is clear that an insurance carrier's duty to defend is determined by reference to the allegations of the underlying complaint. Where, as here, the complaint contains allegations which may be covered by the policy, the carriers' duty continues until such time, if ever, as the claim might be confined to non-covered allegations.

*See also Forum Ins. Co. v. Allied Sec., Inc.,* 866 F.2d 80 (3rd Cir.1989); *Fireman's Fund Ins. Cos. v. Ex–Cell–O Corp.,* 752 F.Supp. 812 (E.D.Mich.1990); *Sachs v. St. Paul Fire & Marine Ins. Co.,* 303 F.Supp. 1339 (D.D.C.1969) (finding that the insurer's duty to defend "lasts until a stage of the proceedings is reached at which it is clear that no element of the subject matter of the suit is within the scope of the policy."); *City of Myrtle Point v. Pacific Indemnity Co.,* 233 F.Supp. 193 (D.Or.1963).

Our analysis is further supported by a consideration of the contractual nature of the relationship between the insured and the insurer. The insurer's duty to defend and indemnify is its consideration to the insured in exchange for the insured's payment of premiums. *See Brohawn,* 276 Md. at 408, 347 A.2d 842 ("The [insurer's] obligation is contractual and exists because of the agreement made by Transamerica with Mrs. Brohawn."). Thus, by its contract, the insurer is obligated to provide a defense to a covered claim, even if the claim will ultimately fail. The converse is also true, however. The insurer is not obligated to provide a defense to a suit that does not assert a covered claim. Therefore, as a matter of contract interpretation, the insurer is entitled to refuse to defend a suit for which it has no obligation under the contract.

In an attempt to bring the *Corradetti* suit within the policy, appellant argues that its liability arose out of Ferguson's work, because Ferguson was responsible for filling in the splicing pit, and since the policy covers BGE for claims based on that theory of negligence, Commercial should have a duty to defend. This argument misses the point, however. Commercial's duty depends upon whether the *allegations* raised by the Corradettis are within the scope of the policy. In this case, the Corradettis chose to revise their allegations to sue BGE on a theory that BGE was responsible for the Corradettis' injuries directly, entirely because of its own negligence. This claim is simply not covered under Commercial's policy.

Moreover, in order to bring the claim within the policy, BGE was not entitled to show that Ferguson *shared* liability for the Corradettis' injuries. Although the insured may, under certain circumstances, proffer extrinsic evidence, the proposed extrinsic evidence must pertain to an issue that will be generated at trial, or a cause of action asserted in the suit. *See Cochran,* 337 Md. at 112, 651 A.2d 859 (holding that the insurer had a duty to defend when the facts "sufficiently establish a reasonable potential that a self defense issue will be generated at trial."); *Reames,* 111 Md.App. at 561, 683

A.2d 179 ("[The] extrinsic evidence must, however, relate in some manner to a cause of action actually alleged in the complaint and cannot be used by the insured to create a new, unasserted claim that would create a duty to defend."). As we noted in our earlier unpublished opinion affirming the underlying *Corradetti* verdict, BGE's contention that Ferguson was also liable was not relevant in the *Corradetti* suit. *Baltimore Gas & Electric Co.*, No. 1493, slip op. at 11.

Nevertheless, as a result of our decision affirming the *Corradetti* verdict, we said that BGE is entitled to pursue its cross-claim against Ferguson.[5] BGE could have elected in that cross-claim to pursue a claim that BGE's liability for the Corradettis' injuries was premised on BGE's failure to supervise Ferguson properly or on a derivative liability theory based on Ferguson's own negligence. Even if BGE could successfully prove these allegations, however, they would still not bring the Corradettis' claim against BGE within the ambit of Commercial's policy.

Commercial's policy covered damages that BGE becomes legally obligated to pay "because of 'bodily injury' or 'property damage' to which this coverage applies." Thus, if BGE must pay damages to an injured party because of bodily injury *based on claims for which BGE is covered* by the policy, then Commercial must indemnify BGE. BGE became legally obligated to pay money to the Corradettis, however, because of bodily injury caused by its own negligence, to which Commercial's policy does *not apply.* Even if BGE later proves that Ferguson was acting as BGE's agent and Ferguson was also negligent, the claim against BGE was not based on that theory of liability.

Further, according to the policy's plain language, Commercial had a right and a duty "to defend" BGE. The policy does not provide coverage for suits *by BGE against others, wholly*

---

**5.** The parties have not advised us whether BGE pursued this claim, or of the outcome of the claim.

*independent of BGE's defense.*[6] An attempt to show that BGE and Ferguson were joint tortfeasors who *shared* liability would not be a complete defense in the *Corradetti* suit. Thus, it would not create a duty "to defend" BGE. Nor would such a cross-claim by BGE against Ferguson come within the confines of the policy.

Accordingly, we conclude that Commercial had a duty to defend BGE, but only until the court granted the Corradettis' motion to dismiss. At that point, there was no longer a potentiality of coverage under the policy. Once the suit was "confined to noncovered allegations", Commercial no longer had a duty to defend BGE. We emphasize that, based on the blanket contract, the same result would not have attended if the Corradettis had sued BGE on a theory of derivative liability, including a failure to supervise Ferguson properly.

We are constrained to note that if, at the outset of the litigation, Commercial had provided BGE with counsel, as it had a duty to do, the attorney may have been obligated to continue representing BGE for the remainder of the trial, notwithstanding Commercial's lack of any contractual duty to defend and indemnify. Under Rule 1.16(b) of the Maryland Rules of Professional Conduct, absent good cause, a lawyer may only withdraw from representing a client if the "withdrawal can be accomplished without material adverse effect on the interests of the client." Moreover, under Rule 1.16(c), "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." The concern for the interests of the client would have been especially salient in this case, because the change affecting the insurer's duty to defend occurred on the eve of trial. Thus, had the insurer timely provided an attorney, consistent with its obligation, it would not, in all probabili-

---

6. We do not suggest that an insurer actively defending its insured could not undertake counter or cross claims on behalf of its insured. Such claims may fall within the duty to defend, and it would be incumbent upon the insurer to pursue them. Also, as part of a defense strategy, the insurer may wish to pursue such claims, even if not required to do so.

ty, have been permitted to withdraw at the eleventh hour, regardless of the change in allegations.[7]

Nevertheless, the obligation of the attorney to continue its representation under such circumstances rests upon the ethical canons governing attorney conduct, not upon a contractual obligation. As the Court noted in *Brohawn,* the insurer's duty to defend is based on a contractual promise. *See Brohawn,* 276 Md. at 409, 347 A.2d 842 ("The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums."). Thus, once the allegations against BGE were no longer potentially covered by the policy, BGE was no longer entitled to representation as part of its contract under the policy. Consequently, BGE may have been responsible for compensating the insurer for the continuing representation.

The rule in Maryland is clear, however, that if an insured must resort to litigation to force its insurer to fulfill its duty to defend, then the insured may recover the fees, costs and expenses of the litigation. *Continental Casualty Co. v. Board. of Educ.,* 302 Md. 516, 489 A.2d 536 (1985); *Bankers & Shippers Ins. Co. v. Electro Enter., Inc.,* 287 Md. 641, 415 A.2d 278 (1980); *Cohen v. American Home Assur. Co.,* 255 Md. 334, 258 A.2d 225 (1969); *Nolt v. USF & G,* 329 Md. 52, 617 A.2d 578 (1993). "If an insurer wrongfully refused to defend an insured, it should be liable for the damages that the insured thereby incurs...." *Oweiss,* 67 Md.App. at 720, 509 A.2d 711 (*quoting* A.D. Windt, INSURANCE CLAIMS AND DISPUTES § 4.35 (1982)). When all damages are ascertained, the insured may recover for breach of contract. *Luppino,* 110 Md.App. at 382, 677 A.2d 617. As we have determined that Commercial had a duty to defend BGE until the Coradettis dismissed their claims against the other parties, the trial court, on remand,

---

7. Of course, if BGE would have preferred another lawyer at that point, BGE could have requested a continuance from the trial court to procure other counsel. The request need not have been granted, however.

should determine the reasonable fees, costs, and expenses that BGE incurred during the period when BGE was entitled to representation, for which Commercial may be liable.

### III. Commercial's Duty to Indemnify BGE

 "[A]n insurer's unjustified refusal to defend does not estop it from later denying coverage under its duty to indemnify.... The insurer's breach of contract should not ... be used as a method of obtaining coverage for the insured that the insured did not purchase." *Oweiss,* 67 Md.App. at 720, 509 A.2d 711 (*quoting* A.D. Windt, INSURANCE CLAIMS AND DISPUTES § 4.35 (1982)). As the judgment against BGE in the *Corradetti* suit was not based on Ferguson's negligence, it was not covered by the policy. Therefore, Commercial had no duty to indemnify BGE for the judgment in the *Corradetti* suit.

Nevertheless, BGE, in its cross-claim, could seek contribution from Ferguson on the theory that Ferguson is a joint tortfeasor with BGE. As we said in *Hartford v. Scarlett Harbor,* 109 Md.App. 217, 280–81, 674 A.2d 106, *cert. granted,* 343 Md. 334, 681 A.2d 70 (1996),

> [i]n order for a party to have a right of contribution, two prerequisites must be satisfied. First, the parties must share a "common liability" or burden. Second, the party seeking contribution must have paid, under legal compulsion, more than his fair share of the common obligation.

> Parties share a common liability if they are either co-obligors or joint tortfeasors. Parties are co-obligors if they are jointly liable or jointly and severally liable on an obligation. They are not co-obligors, however, if they are only severally liable on the obligation. The Uniform Contribution Among Tortfeasors Act, Md. Ann.Code, art 50, § 16(a) (1994), provides: " 'Joint tort-feasors' means two *or* more persons jointly *or* severally liable *in tort* for the same injury to person or property, whether or not judgment has been recovered against all or some of them." (Emphasis supplied). In sum, parties share a common liability if they are

either (1) jointly liable on the same non-tort obligation (such as a contract, promissory note, or tax), or (2) jointly or severally liable, or both, in tort, for the same harm.

(Citations omitted.) Further, as our recent opinion in *Lerman v. Heemann*, 112 Md.App. 320, 326–28, 685 A.2d 782 (1996) makes clear, the tortfeasor seeking contribution need not even have lodged a cross-claim in the tort plaintiff's suit in order to seek contribution from its joint tortfeasor.

In this case, BGE filed a cross-claim against Ferguson. If BGE can prove that Ferguson is a joint tortfeasor in regard to the Corradettis' injuries, it may be entitled to contribution. BGE's claim, however, would arise from traditional tort principles, not from its insurance policy with Commercial. Although, in the end, Commercial may be required to pay monies to BGE, on behalf of Ferguson, if Ferguson is found liable, Commercial's obligation to pay would arise from its contractual obligation as *Ferguson's insurer.*

**JUDGMENT REVERSED IN PART AND AFFIRMED IN PART AS TO COMMERCIAL'S AND AMERICAN'S DUTY TO DEFEND BGE.**

**JUDGMENT IN FAVOR OF COMMERCIAL AND AMERICAN AFFIRMED AS TO INDEMNIFICATION.**

**JUDGMENT ON BREACH OF CONTRACT CLAIM, IN FAVOR OF FERGUSON, AFFIRMED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE HALF BY BGE, ONE QUARTER BY COMMERCIAL, AND ONE QUARTER BY AMERICAN.**