754 A.2d 503

Joyce RAGIN, Personal Representative of
the Estate of Flemmie Pettiford,

v.

PORTER HAYDEN COMPANY et al.

No. 706, Sept. Term, 1999.

Court of Special Appeals of Maryland.

June 29, 2000.

Clifford W. Cuniff, Baltimore, for appellant.

Padraic McSherry Morton (Gardner M. Duvall and White-ford, Taylor & Preston, L.L.P. on the brief), Baltimore, for appellee.

Argued before WENNER, HOLLANDER and SONNER, JJ.

HOLLANDER, Judge.

This case is a by-product of the consolidated asbestos trials conducted in the Circuit Court for Baltimore City. We are called upon here to consider the scope of a stipulation as to liability executed in connection with a consolidated asbestos case, and to construe a jury verdict in a case that was previously considered by the Court of Appeals in 1995.[1]

Joyce Ragin, appellant, is the daughter of the late Flemmie Pettiford and personal representative of his estate. In 1990, appellant initiated a wrongful death and survival action in the Circuit Court for Baltimore City against more than a dozen defendants, including Porter Hayden Company ("Porter Hayden"),[2] appellee, a supplier and installer of products containing asbestos. She alleged that Pettiford suffered from asbestosis as a result of his occupational exposure to asbestos-containing products, for which the defendants were allegedly responsible. It is undisputed that Pettiford's asbestos exposure ended in 1945.

Appellant's suit was subsequently consolidated with 8,554 other actions involving claims for personal injuries or wrongful death arising from asbestos exposure. The cases were consolidated in order to resolve at one trial various

---

1. At the outset, we note that the record in this case does not provide much background information that sheds light on the history of this protracted mass tort litigation, with which the parties and their counsel are obviously quite familiar. In order to understand the issues presented here, some historical background is useful. Accordingly, we rely on the appellate decisions of *ACandS, Inc. v. Godwin*, 340 Md. 334, 667 A.2d 116 (1995) (*"Godwin "*), and *ACandS, Inc. v. Abate*, 121 Md.App. 590, 710 A.2d 944 (*"ACandS "*), cert. denied sub nom. *Crane v. Abate*, 350 Md. 487, 713 A.2d 979 (1998), cert. denied sub nom. *John Crane, Inc. v. Abate*, 525 U.S. 1171, 119 S.Ct. 1096, 143 L.Ed.2d 95 (1999), for important background information. The *Godwin* decision resulted from an appeal of the jury verdict rendered in a case commonly known in asbestos litigation circles as *"Abate I,"* discussed *infra*. *ACandS* resulted from an appeal of a jury verdict in a case commonly called *"Abate II,"* also discussed *infra*. Neither the judgments in *Abate II* nor the disposition of *ACandS* is pertinent to the case before us, however.

2. All references to Porter Hayden include its predecessor companies.

common issues, including "state of the art"[3] and punitive damages. That trial was conducted in four phases in 1992 in the Circuit Court for Baltimore City, (Levin, J. presiding), and is commonly referred to among asbestos litigators as *Abate I.*

In *Abate I,* the jury found, *inter alia,* that Porter Hayden was liable for compensatory damages as to users and bystanders on a negligence basis for the period 1956 through 1979, and that it was strictly liable to users and bystanders from 1956 to the present. *Godwin,* 340 Md. at 380, 667 A.2d 116. In addition, the jury determined that appellee was liable for punitive damages from 1965 to July 30, 1992, the date of verdict on that issue. Post trial motions were denied in a 225 page opinion issued by Judge Levin in June 1993. Following additional legal proceedings, a final judgment was entered in November 1993.

A second consolidated asbestos trial, known as *Abate II,* was held in the Circuit Court for Baltimore City over a period of many months, beginning in June 1994 and concluding in February 1995 (Rombro, J., presiding). With respect to approximately 1,300 plaintiffs, *Abate II* resolved common issues identical to the common issues tried in *Abate I.* During the trial of *Abate II,* appellee reached an agreement with some of the plaintiffs in that case, in the form of a "Stipulation," in which appellee waived proof of negligence and strict liability in return for the plaintiffs' agreement to waive their claims with respect to punitive damages, breach of warranty, fraud, and conspiracy.

The plan for asbestos litigation in the circuit court also contemplated so-called "mini-trials," to be held after the consolidated trials, at which the claims of the common issue plaintiffs would be finally adjudicated upon determination of

---

**3.** " 'State of the art includes all of the available knowledge on a subject at a given time, and this includes scientific, medical, engineering, and any other knowledge that may be available. State of the art includes the element of time: What is known and when was this knowledge available.' " *ACandS, Inc. v. Asner,* 344 Md. 155, 165, 686 A.2d 250 (1996) (quoting *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1164 (4th Cir.1986)).

whether an individual common issue plaintiff was actually exposed to and injured by asbestos products. Appellant's mini-trial never took place, however, because the circuit court granted appellee's motion for summary judgment; that ruling is at issue here. In granting summary judgment, the court reasoned that appellant was not entitled to pursue her claim because Pettiford's asbestos exposure ended in 1945 and the jury had determined in *Abate I* that appellee was not liable to any common issue plaintiffs whose last exposure to asbestos occurred before 1956.

After the court denied appellant's motion to alter or amend judgment, appellant noted this appeal. She presents the following questions for our review, which we have rephrased:

I. Did the circuit court err in concluding that the Stipulation entered into during *Abate II* and the negligence date established in *Abate I* barred appellant's recovery?

II. Assuming, *arguendo*, that the Stipulation did not include appellant, did the circuit court err in concluding that appellee did not owe Pettiford a continuing duty to warn?

For the reasons that follow, we shall vacate the judgment and remand.

## FACTUAL BACKGROUND

From the late 1920s until approximately 1972, Porter Hayden and its predecessors distributed and installed asbestos products, primarily for Johns–Manville, a manufacturer. *Godwin*, 340 Md. at 356–57, 667 A.2d 116. Porter Hayden "describe[d] itself as ... an insulation contractor and supplier of thermal insulation products in Maryland and three other States." *Id.* at 356, 667 A.2d 116. By about 1972, Porter Hayden discontinued its use of products containing asbestos. *Id.* at 364, 667 A.2d 116.

Pettiford was allegedly exposed to asbestos dust in the course of his employment from April 1943 to September 1945. During that time, Pettiford worked as a rigger/lagger for

Maryland Shipbuilding and Drydock and as a rigger at Bethlehem Steel's Fairfield Shipyard. Eventually, Pettiford developed asbestosis and died in February 1990.[4] Appellant filed her complaint on August 28, 1990, "incorporating by reference the causes of action ... set forth in the 'Shipyard Cases Master Complaint,' "[5] and asserting claims for strict liability, negligence, conspiracy, breach of warranty, and wrongful death. Because appellant's case was part of the consolidation in *Abate I*, exposure and damage issues were to be resolved at a separate mini-trial.

Trial in *Abate I* was divided into four phases and consumed six months in 1992. The case, as we noted, involved certain common issues raised by 8,555 plaintiffs, all of whom filed suit prior to October 1, 1990. In addition, to facilitate the jury's understanding of the issues presented in an asbestos case, the cases of six illustrative plaintiffs were tried to full and final judgments. Although over 100 defendants had been named in the various suits, the claims against all but fifteen were dismissed prior to trial, and nine of the remaining defendants settled prior to verdict. Several defendants also filed various cross-claims. The court severed most of the cross-claims from *Abate I*, and determined that they would be tried in *Abate II*.

The *Abate I* jury found in favor of three of the individual plaintiffs and against the other three. On the common issues applicable to the remaining 8,549 plaintiffs, the jury found the six remaining defendants, including Porter Hayden, and one cross-claim defendant, negligent and strictly liable. As to appellee, the jury in *Abate I* found Porter Hayden liable for compensatory damages to asbestos users and bystanders from 1956 to 1979 on a negligence theory, and from 1956 to the date of verdict on a strict liability theory. Moreover, four defen-

---

**4.** Although not supported by the record in this particular case, appellant contends in her brief that Pettiford was a cigarette smoker, that he was diagnosed with asbestosis in 1988, and that he died from complications associated with disease in February 1990.

**5.** The record before us does not contain the Shipyard Cases Master Complaint.

dants, Porter Hayden among them, were found liable for punitive damages. One of those defendants subsequently settled and another was dismissed from the case after petitioning for relief under the Bankruptcy Code. The Court of Appeals subsequently reversed the award of punitive damages against the remaining two defendants, including Porter Hayden. *See generally Godwin,* 340 Md. 334, 382, 424–26, 667 A.2d 116 (concluding, *inter alia,* that evidence was insufficient to support punitive damages award against Porter Hayden as to bystanders and, on motion for reconsideration, that evidence was also insufficient to support punitive damages against Porter Hayden with respect to users). Moreover, the Court affirmed in part and reversed in part the various judgments for compensatory damages.

In June 1994, nearly two years after the conclusion of *Abate I, Abate II* proceeded to trial in the circuit court. That trial, which lasted several months and continued into early 1995, involved approximately 1,300 plaintiffs who filed asbestos suits between October 1, 1990, and October 1, 1993. In three phases, the parties litigated common issues identical to those litigated in *Abate I,* as well as the claims of five illustrative plaintiffs, which were tried to full and final judgment. By the time of trial, the plaintiffs sought to recover from eleven defendants. Moreover, *Abate II* resolved cross-claims severed from *Abate I,* as well as cross-claims and third-party claims related to *Abate II.* In its jury instructions in *Abate II,* the court advised the jury, *inter alia,* that a manufacturer has a continuing duty to warn users of a defective product, and must make reasonable efforts to do so. *ACandS,* 121 Md.App. at 637, 710 A.2d 944.

With respect to the negligence claim at the trial in *Abate I,* the verdict sheet read, in pertinent part: [6]

### NEGLIGENCE

1.

a) Do you find by a preponderance of the evidence that Defendant Porter Hayden Company was negligent in manu-

---

6. The jury's findings are in bold. The size of the type has been reduced to fit the text to the page.

facturing, selling, distributing or installing any of its asbestos-containing products? Indicate your answers on the chart [below].

b) If you find Defendant Porter Hayden Company was negligent as to one or more products, indicate the dates of the Defendant's negligence for each product with respect to foreseeable USERS and BYSTANDERS.

## DEFINITIONS

A USER is defined as an individual who comes in contact with asbestos fibers by directly handling an asbestos-containing product.

A BYSTANDER is defined as an individual who did not directly handle an asbestos-containing product, but was near enough to an asbestos-containing product's fibers to come in contact with those fibers.

\* \* \*

| Porter Hayden Company | (a) NEGLIGENT MANUFACTURE, SALE, DISTRIBUTION OR INSTALLATION | | (b) DATES OF NEGLIGENT MANUFACTURE, SALE, DISTRIBUTION OR INSTALLATION, IF ANY | |
| --- | --- | --- | --- | --- |
| PRODUCTS | YES | NO | USERS | BYSTANDERS |
| ALL OF THE PRODUCTS BELOW -OR- NONE OF THE PRODUCTS BELOW -OR- ONE OR MORE OF THE FOLLOWING [SEVEN ASBESTOS-CONTAINING] PRODUCTS .... | X | | 1956–1979 | 1956–1979 |

Similarly, on the issue of strict liability, the verdict sheet stated, in part:

## STRICT LIABILITY

1.

a) Do you find by a preponderance of the evidence that Defendant Porter Hayden Company manufactured, sold, distributed or installed asbestos-containing products that

were in a defective condition unreasonably dangerous to foreseeable USERS or BYSTANDERS? Indicate your answers on the chart [below].

b) If you find one or more of Defendant Porter Hayden Company's products was defective and unreasonably dangerous, also indicate the dates each product was defective with respect to foreseeable USERS and BYSTANDERS.

\* \* \*

| Porter Hayden Company | (a) DEFECTIVE AND UNREASONABLY DANGEROUS | | (b) DATES DEFECTIVE AND UNREASONABLY DANGEROUS, IF ANY | |
|---|---|---|---|---|
| PRODUCTS | YES | NO | USERS | BYSTANDERS |
| ALL OF THE PRODUCTS BELOW -OR- NONE OF THE PRODUCTS BELOW -OR- ONE OR MORE OF THE FOLLOWING [SEVEN ASBESTOS-CONTAINING] PRODUCTS .... | X | | 1956– TO PRESENT | 1956– TO PRESENT |

After briefs were filed by the parties in *Godwin* (i.e., the appeal of *Abate I* ), but before oral argument, Porter Hayden settled with over 7,900 of the consolidated plaintiffs from *Abate I*. Appellant was not among them. On October 27, 1998, before a trial date was set for appellant's mini-trial, Porter Hayden moved for summary judgment.[7] In support of its motion, appellee filed: (1) a copy of appellant's complaint; (2) a paper documenting Pettiford's disease and the times and places of asbestos exposure; and (3) copies of the verdict

---

7. The caption on appellee's motion for summary judgment refers to appellant, but the body of the motion refers to the plaintiff as Andrew Yarborough. It appears from the record that appellee filed motions for summary judgment against four plaintiffs: Andrew Yarborough, John L. Gibbon, Woodrow Rhodes, and appellant, each of whom claimed asbestos exposure prior to 1956. Although the circuit court ultimately granted all four motions, only appellant's claim is before us.

sheets as to Porter Hayden from *Abate I*. Relying on the jury's determination of liability in *Abate I*, Porter Hayden averred that it could not be held liable for exposure to asbestos products prior to 1956, and therefore it was not liable to Pettiford, whose asbestos exposure ended in 1945.

At all stages of this litigation, including this appeal, Clifford W. Cuniff, Esquire, has represented appellant. On November 19, 1998, Cuniff filed appellant's opposition to Porter Hayden's motion, together with a copy of the Stipulation. In her opposition, appellant alleged that Porter Hayden's liability to "all plaintiffs represented by Cuniff in Abate I and Abate II was finally resolved by [S]tipulation and not by verdict."

The Stipulation, which was negotiated during the trial of *Abate II* and the pendency of the appeal of *Abate I*, provided:

| | |
|---|---|
| IN RE: PERSONAL INJURY | * IN THE |
| ASBESTOS LITIGATION | * CIRCUIT COURT |
| ABATE, et al., | * FOR |
| v. | * BALTIMORE CITY |
| AcandS, et al. | * Consolidation No. 93076701 |

\* \* \* \* \* \*

### STIPULATION RESOLVING COMMON ISSUES DETERMINATIONS OF DEFENDANT PORTER HAYDEN COMPANY

Each of the Plaintiffs represented by the undersigned counsel whose cases have been consolidated in the case number captioned above, hereby agree with Defendant Porter Hayden Company that Porter Hayden waives proof of its alleged negligence and strict liability, in exchange for which each Plaintiff waives and dismisses with prejudice his or her claim for punitive damages and any claim of breach of warranty, fraud, conspiracy, and/or market share. Any judgment entered pursuant to this stipulation shall not be subject to appeal by any party to this agreement based on the failure to prove negligence and/or strict liability, or for failure to award punitive damages.

The undersigned attorneys hereby represent and acknowledge the authority of their respective clients to execute this stipulation on behalf of each of their clients.

Although undated, the Stipulation was signed by Gardner M. Duvall, Esquire, of Whiteford, Taylor & Preston (collectively, "Whiteford, Taylor") for Porter Hayden and by Joseph F. Rice, Esquire, of Ness, Motley, Loadholt, Richardson & Poole (collectively, "Ness, Motley"), for "the Plaintiffs." According to appellant, Ness, Motley was co-counsel with Cuniff for all *Abate I* and *Abate II* plaintiffs who retained Cuniff.

Appellant also supported her opposition with an affidavit of John E. Herrick, Esquire. Herrick averred, in pertinent part:

4. I personally participated in the negotiations and resolution of discussions leading tot he [sic] Stipulation Resolving Common Issues Determinations of Defendant Porter Hayden Co.

5. It was my understanding and the intent of the Stipulation that it was to be applicable to all *Abate I* and *Abate II* consolidated plaintiffs.

6. The common issues involved in 1994 related to the liability dates of Porter Hayden for both *Abate I* and *Abate II* plaintiffs which had been consolidated into the *Abate II* trial and cross-claims determination for all plaintiffs.

7. As a result of the Stipulation ..., Porter Hayden has waived any defense to negligence or strict liability against it, including any defense regarding the dates of Porter Hayden's liability, as to *Abate I* plaintiffs.

Alternatively, appellant argued that, even in the absence of the Stipulation, the jury's verdict did not warrant a finding that appellee was not liable to appellant based on its continuing duty to warn. In essence, she claimed that although Pettiford's exposure ended before 1956, the jury's finding of negligence as of 1956 meant that Porter Hayden's duty to make reasonable efforts to warn Pettiford commenced as of that time and continued through the end of his life. Appellant suggested that "[t]he breach of that duty creates liability regardless of when" the decedent was last exposed.

On December 18, 1998, Porter Hayden filed its reply to appellant's opposition, alleging that the Stipulation applied only to those plaintiffs who were represented by Cuniff and

Ness, Motley in *Abate II*. Appellee pointed out that the Stipulation's caption refers only to "Consolidation No. 93076701," which was *Abate II*'s case number. Consolidation Numbers 89236704 and 89236705 were used for *Abate I*. Moreover, in support of its reply, Porter Hayden attached an excerpt of a similar stipulation reached with plaintiffs represented by the Law Offices of Peter G. Angelos. In contrast to the Stipulation at issue here, that document specifically referred to all three consolidation numbers assigned to *Abate I* and *Abate II*. Appellee also offered an affidavit of Duvall, which stated, in part: "In making the [S]tipulation, Mr. Rice [plaintiffs' counsel] expressly declined to extend the agreement to *Abate 1* cases, with the statement that punitive damages had been won in *Abate 1*, and would not be negotiated away."

With respect to appellant's allegation that Porter Hayden owed Pettiford a continuing duty to warn, appellee asserted that the jury in *Abate I* decided that Pettiford's injury "was not caused by the fault of Porter Hayden. The exposure may have caused harm, but Porter Hayden's fault did not. Mr. Pettiford has a claim of breach of a continuing duty, without any harm resulting from the breach. The harm was caused by events preceding the breach."

The court held a hearing on appellee's motion for summary judgment on January 25, 1999. At the conclusion of the hearing, the court granted appellee's summary judgment motion, explaining:

I believe that this issue is ripe for resolution. I don't think that any testimony is necessary. I certainly wouldn't hear from Mr. Duvall as to what his opinion is as to what the agreement meant, and I'm not going to accept from Mr. Herrick an affidavit as to what he thinks the agreement and stipulation meant.

The rule of construction is parole [sic] evidence is inadmissible. The [Stipulation] is susceptible to interpretation on its face. I think that it is. I don't think it is that unusual or that difficult to determine what it is, and I think

outside evidence from the lawyers who were involved with each one giving me his spin as to what he thinks they had in mind I don't think would be admissible.

So I look at the agreement. The agreement speaks to negligence and strict liability. I'm quoting. "Proter [sic] Hayden waives proof of its alleged negligence and strict liability."

It doesn't say, and I think I have seen agreements such as this before, that doesn't say that anybody that has a claim against Porter Hayden that Porter Hayden is going to be responsible for them.

The person still has to show an exposure to a Porter Hayden product. The person still has to show that the exposure came at a time when Porter Hayden was responsible.

The agreement, in my judgment, doesn't address that at all. The agreement says they are waiving proof of negligence and strict liability. That means the plaintiff still has to prove exposure, and for the purposes of this case in Abate I they didn't. They didn't prove to the jury that their client was exposed—that these clients were exposed during the period of time that Porter Hayden was responsible.

... I don't know why counsel seems to think it is such a great case, great in the sense of so many points involved. I don't.

It makes perfect sense. This was, after all, in a time, when we have to go back in time, this was at a time when punitive damages were very much alive. Defendants were concerned about punitive damages and defendant said okay, if you agree that you are not going to claim punitive damages, I will agree that we were negligent and strictly liability [sic].

Now, all you have got to show is your guy, and that is essentially what mini trials is, isn't it [sic]? A mini trial, you say okay, defendant is negligent, now you have to come in in a mini trial and you have to show exposure to the defen-

dant's product and what the disease is and so forth, and that is what the plaintiffs didn't show in Abate I.

The second part of the plaintiff's argument ... I just have difficulty accepting.

The defendant was found not to be responsible to [appellant] by reason of the fact that [Pettiford's] exposure to asbestos came at a time when the defendant, Porter Hayden, was not responsible.

How it can go from not being responsible to being responsible at some later time, maybe even a period of a number of years, it is difficult for me to fathom. Even if you accept, as I guess one must, that there is a continuing duty to warn, I don't know what that means. I don't know if that means that Porter Hayden has to go back and warn the whole universe of people who might have been exposed to some of their products prior to a certain date, I don't know. All I know is that in this case the jury said they weren't responsible.

I assume that it was never submitted to the jury. I don't know. I don't know this, whether it was submitted to the jury, the issue of a continuing duty to warn. If it wasn't, it is waived.

The plaintiff has its right to bring its case against the defendant on all the theories that are available to it, and if it leaves some out, it can't come back and say now I want another trial because I thought of another theory of liability.

\* \* \*

I find that the [Stipulation] for the reasons I have already stated goes to the negligence question, as I have already outlined, and there has been a failure of proof on the part of the plaintiff. . . .

We shall include additional facts in our discussion.

## STANDARD OF REVIEW

"Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is

entitled to judgment as a matter of law." *King v. Board of Educ.*, 354 Md. 369, 376, 731 A.2d 460 (1999); *see* Md. Rule 2–501(e); *Philadelphia Indem. Ins. Co. v. Maryland Yacht Club, Inc.*, 129 Md.App. 455, 465, 742 A.2d 79 (1999); *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 386, 693 A.2d 370 (1997). In reviewing the circuit court's grant of summary judgment, we evaluate "the same material from the record and decide[ ] the same legal issues as the circuit court." *Lopata v. Miller*, 122 Md.App. 76, 83, 712 A.2d 24, *cert. denied*, 351 Md. 286, 718 A.2d 234 (1998).

■■■■ In order to proceed to trial, the non-moving party must first produce evidence of a disputed material fact. *See Scroggins v. Dahne*, 335 Md. 688, 691, 645 A.2d 1160 (1994); *Wankel v. A & B Contractors, Inc.*, 127 Md.App. 128, 156, 732 A.2d 333, *cert. denied*, 356 Md. 496, 740 A.2d 614 (1999). A material fact is one that will alter the outcome of the case, depending upon how the fact-finder resolves the dispute. *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985); *Faith v. Keefer*, 127 Md.App. 706, 734, 736 A.2d 422, *cert. denied*, 357 Md. 191, 742 A.2d 521 (1999). In opposing the motion, the non-moving party must present more than "mere general allegations which do not show facts in detail and with precision." *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738, 625 A.2d 1005 (1993). Nevertheless, the court views the facts, and all reasonable inferences drawn from the facts, in the light most favorable to the non-moving party. *Dobbins v. Washington Suburban Sanitary Comm'n*, 338 Md. 341, 345, 658 A.2d 675 (1995); *Electronics Store, Inc. v. Cellco Partnership*, 127 Md.App. 385, 395, 732 A.2d 980, *cert. denied*, 356 Md. 495, 740 A.2d 613 (1999).

■■■■ When there are no disputes of material fact, the court may resolve the case as a matter of law. *See* Md. Rule 2–501(e). In reviewing the trial court's decision, we must determine whether the court reached the correct legal result. *Beatty*, 330 Md. at 737, 625 A.2d 1005. Generally, we review an award of summary judgment "only on the grounds relied upon by the trial court." *Blades v. Woods*, 338 Md. 475, 478,

659 A.2d 872 (1995). But, "[i]f the alternative ground is one upon which the circuit court would have had no discretion to deny summary judgment, summary judgment may be granted for a reason not relied upon by the trial court." *Davis v. Goodman,* 117 Md.App. 378, 395 n. 3, 700 A.2d 798 (1997) (citing *Blades,* 338 Md. at 478, 659 A.2d 872); *accord Suburban Hosp., Inc. v. Maryland Health Resources Planning Comm'n,* 125 Md.App. 579, 587 n. 1, 726 A.2d 807, *cert. granted,* 354 Md. 570, 731 A.2d 969 (1999). When a motion is based solely upon "a pure issue of law that could not properly be submitted to a trier of fact," then "we will affirm on an alternative ground." *Davis,* 117 Md.App. at 395 n. 3, 700 A.2d 798.

## DISCUSSION

### I.

Appellant contends that her suit is covered by the Stipulation, in which appellee conceded liability. Appellee has responded by reinvigorating the argument it raised below, claiming that the Stipulation does not apply to appellant because it does not apply to any *Abate I* cases. Rather, appellee maintains that the Stipulation is an unambiguous contract applicable on its face only to *Abate II* plaintiffs represented by Ness, Motley.

▮▮▮▮▮▮ "[A] stipulation is an agreement between counsel akin to a contract. Like contracts, stipulations are based on mutual assent and interpreted to effectuate the intent of the parties." *State v. Broberg,* 342 Md. 544, 558, 677 A.2d 602 (1996) (citing *Burke v. Burke,* 204 Md. 637, 645, 106 A.2d 59 (1954)); *see C & K Lord, Inc. v. Carter,* 74 Md.App. 68, 94, 536 A.2d 699 (1988) (stating that a stipulation carries the binding force of a contract); *see also Glassman Constr. Co. v. Baltimore Brick Co.,* 246 Md. 478, 481–82, 228 A.2d 472 (1967) (referring to dictionary to interpret terms used in stipulation and acknowledging that effect should be given to the intentions of stipulating parties); *Bloom v. Graff,* 191 Md. 733, 736, 63 A.2d 313 (1949) (stating that when "a stipulation is agreed

to by counsel the orderly trial of the case demands that the parties be bound thereby"); *Porter v. South Carolina Pub. Serv. Comm'n,* 333 S.C. 12, 507 S.E.2d 328, 337 (1998) (acknowledging that a court must construe a stipulation like a contract and, therefore, "a stipulation that is unambiguous and explicit must be construed according to the terms the parties have used, as those terms are understood in their plain, ordinary, and popular sense"); 83 C.J.S. *Stipulations* § 11 (1953) ("In the construction of stipulations the rules applicable to the construction of contracts are generally applicable; the primary rule is to ascertain and give effect to the intention of the parties.").

 To guide our review of the Stipulation, we turn to review the well-established body of law governing the interpretation of contracts.[8] A fundamental principle of contract construction is to ascertain and effectuate the intention of the contracting parties, unless that intention is at odds with an established principle of law. *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership,* 109 Md.App. 217, 290–91, 674 A.2d 106 (1996), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997). Thus, "[t]he primary source for determining the intention of the parties is the language of the contract itself." *Scarlett Harbor Assocs.,* 109 Md.App. at 291, 674 A.2d 106.

 The law of objective interpretation of contracts is also applicable to contract construction. *See Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 340, 731 A.2d 441 (1999); *Calomiris v. Woods,* 353 Md. 425, 435, 727 A.2d 358 (1999); *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 266, 686 A.2d 298 (1996). This means that when the language of a written agreement is clear and unambiguous, it controls, even if the expression is not congruent with the parties' actual intent at the time of the document's creation. *Ashton,* 354 Md. at 340, 731 A.2d 441; *Calomiris,* 353 Md. at 436, 727 A.2d 358; *Nicholson Air Servs., Inc. v. Board of*

---

8. We do not, by reference to contract principles, mean to suggest that the Stipulation is necessarily a "contract." *See* 83 C.J.S. *Stipulations* § 1 (comparing and distinguishing stipulations to contracts).

*County Comm'rs,* 120 Md.App. 47, 63, 706 A.2d 124 (1998); *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.,* 113 Md.App. 540, 554, 688 A.2d 496 (1997); *see General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985) ("[T]he true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."). Therefore, "the clear and unambiguous language of an agreement will not give way to what the parties thought that the agreement meant or intended it to mean." *Calomiris,* 353 Md. at 436, 727 A.2d 358. Moreover, "[a] contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement." *Baltimore Gas & Elec. Co.,* 113 Md.App. at 554, 688 A.2d 496.

Contractual language is considered ambiguous "if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris,* 353 Md. at 436, 727 A.2d 358; *accord Ashton,* 354 at 340, 731 A.2d 441; *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 596, 578 A.2d 1202 (1990). In determining whether language is susceptible of more than one meaning, we are not precluded from considering "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 302 Md. 383, 388, 488 A.2d 486 (1985). If ambiguity is found to exist, then extrinsic evidence may be used to determine the parties' intent. *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 508, 667 A.2d 617 (1995); *Pacific Indem. Co.,* 302 Md. at 389, 488 A.2d 486; *see Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 170, 702 A.2d 767 (1997); *cf. Calomiris,* 353 Md. at 433, 727 A.2d 358 ("All courts generally agree that parol evidence is admissible when the written words are sufficiently ambiguous.").

As the Court of Appeals recently said in *Calomiris,* 353 Md. at 434, 727 A.2d 358, " '[t]he question of whether a contract is ambiguous ordinarily is determined by the court as a question of law.' " (Alteration in original) (quoting *State*

*Highway Admin. v. David A. Bramble, Inc.*, 351 Md. 226, 239, 717 A.2d 943 (1998)); *see Ashton*, 354 Md. at 341, 731 A.2d 441; *JBG/Twinbrook Metro Ltd. v. Wheeler*, 346 Md. 601, 625, 697 A.2d 898 (1997). The *Calomiris* Court explained, 353 Md. at 434–35, 727 A.2d 358:

> [T]he determination of ambiguity . . . is subject to *de novo* review by the appellate court. . . . [T]he review is essentially a "paper" review where the same contractual language is before the appellate court as was before the trial court. Since neither the credibility of witnesses nor the evaluation of evidence, other than the *written* contract, is in issue, the policy reasons behind deferring to the trial judge under the clearly erroneous standard are inapplicable.

In essence, an appellate court reviewing a contract must determine whether the trial court was legally correct. *See id.* If the trial court determined that the contract is ambiguous, and that determination is upheld on appeal, then the clearly erroneous standard is implicated as to the lower court's use of extrinsic evidence with respect to the contract. *See id.*

The parties disagree about whether appellant is one of "the Plaintiffs" subject to the Stipulation. It is evident from the court's ruling at the close of the motion hearing that the court did not find the Stipulation ambiguous. Relying on the parol evidence rule, the court expressly refused to consider extrinsic evidence proffered by the parties as to the intent of the stipulating parties. We agree with the trial court that the Stipulation was not ambiguous. Moreover, we conclude from the unambiguous language of the document that it does not apply to appellant's case.

As set forth more fully above, the Stipulation provided, in part:

> Each of the Plaintiffs represented by the undersigned counsel *whose cases have been consolidated in the case number captioned above,* hereby agree with Defendant Porter Hayden Company that Porter Hayden waives proof of its alleged negligence and strict liability, in exchange for

which each Plaintiff waives and dismisses with prejudice his or her claim for punitive damages and any claim of breach of warranty, fraud, conspiracy, and/or market share.

(Emphasis added).

The Stipulation expressly states that it applies to those plaintiffs "whose cases have been consolidated in the case number captioned above." It is equally clear that Consolidation number 93076701 is the *only* case number listed on the Stipulation. Moreover, it is undisputed that 93076701 is the trial number assigned to *Abate II*. Further, it is uncontroverted that appellant was a common issue plaintiff in *Abate I*, not *Abate II*. Thus, by its terms, the Stipulation was expressly limited to those plaintiffs represented by Ness, Motley whose cases were part of the consolidation in *Abate II*. Therefore, the Stipulation does not apply to appellant as an *Abate I* plaintiff.

## II.

Regardless of whether the Stipulation applied to appellant, the trial court concluded that appellant was barred from recovery because Pettiford's exposure to asbestos-containing products ended in 1945, and the court believed that the *Abate I* jury exonerated appellee for the period prior to 1956. Appellant asserts that, even if the Stipulation does not apply to her case, the court erred in granting summary judgment, because it erroneously interpreted the significance of the 1956 date in the *Abate I* verdict, and incorrectly found that Porter Hayden is not liable for compensatory damages to any common issue plaintiff who was last exposed to asbestos prior to 1956. Appellant seems to maintain that the jury's finding with respect to appellee's liability as of 1956 meant that, beginning at that time, appellee owed Pettiford a continuing duty to warn him of hazards associated with his earlier exposure to asbestos-containing products and was negligent for failing to do so. Appellee counters that the jury verdict in *Abate I* indisputably established that "there was no breach of a duty to

warn at the date of Mr. Pettiford's exposure," and no liability to anyone who was exposed prior to 1956.

In essence, appellant asserts that the *Abate I* jury determined that appellee became *liable* for asbestos-related injuries as of 1956, irrespective of the date of a plaintiff's exposure. In contrast, appellee argues that the jury determined that appellee could only be liable for injuries to a plaintiff who was exposed in 1956 or later. To coin our own phrases, appellant contends that 1956 is a "liability start date," while appellee maintains that 1956 is an "exposure start date" or a "liability cut-off date."

In its ruling, the motion judge suggested that appellant's entitlement to a mini-trial depended on what the jury meant in rendering its verdict in *Abate I*. We have no difficulty with that analysis. The court then proceeded to determine that the verdict in *Abate I* barred appellant's recovery because, in effect, 1956 represented a liability cut-off date. Consequently, the court concluded that appellee is not liable to appellant as a common issue plaintiff, because the decedent's last asbestos exposure occurred prior to 1956.

The court's interpretation may, indeed, coincide with what the jury meant. Nevertheless, in the context of the case, we think the verdict is arguably confusing. Indeed, the adage that "hindsight is always 20/20" applies here; in retrospect, a verdict sheet that undoubtedly seemed clear at the time seems less than clear now, considering that, as we shall see, the matter of a continuing duty to warn was part of the court's jury instructions in *Abate I*, but was not the subject of a separate question posed to the jury. Moreover, based on our review of the record presented to the motion court, we do not believe that the court was provided with sufficient information to construe the verdict. Because the jury obviously cannot explain its verdict, and the judge who considered the motion did not preside at the trial in *Abate I*, the motion court would have benefitted from additional information concerning what transpired at trial in *Abate I*.

In order to understand this issue, it is helpful to outline the concept of the continuing duty to warn. As the Court of Appeals explained in *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (*"Zenobia II"*), *reconsideration denied,* 325 Md. 665, 602 A.2d 1182 (1992), a manufacturer of a defective product generally "has a duty to warn of product defects which the manufacturer discovers after the time of sale." *Id.* at 446, 601 A.2d 633; *accord Dudley v. Baltimore Gas & Elec. Co.,* 98 Md.App. 182, 199, 632 A.2d 492 (1993); *see Rekab, Inc. v. Frank Hrubetz & Co.,* 261 Md. 141, 146, 274 A.2d 107 (1971) (" 'Even if there is no duty to warn at the time of the sale, facts may thereafter come to the attention of the manufacturer which make it imperative that a warning then be given.' " (citation omitted)). Indeed, when a manufacturer discovers a product defect after a sale, "the post-sale duty to warn requires reasonable efforts to inform users of the hazard once the manufacturer is or should be aware of the need for a warning." *Zenobia II,* 325 Md. at 447, 601 A.2d 633. In addition, a "seller is not entitled to automatic relief from its continuing duty to warn merely because it no longer manufacturers [sic] a defective product." *Id.* at 448, 601 A.2d 633.

The Court's opinion in *Zenobia II* is instructive. There, William Zenobia and another plaintiff who were diagnosed with asbestosis brought suits against certain asbestos suppliers, installers, and manufacturers, including Owens–Illinois, Inc. ("Owens–Illinois"), under a strict liability theory, for the failure to warn of the hazards of asbestos. Zenobia alleged that he had been exposed to asbestos products through his employment for a total of twenty-five months: four months in 1948, eighteen months between 1951 and 1952, and three months in 1968.

At trial, Zenobia, a cigarette smoker, argued that his smoking aggravated the development of asbestosis, and that "a post-exposure warning from Owens–Illinois would have prevented the aggravation of his disease." *Id.* at 446, 601 A.2d 633. Accordingly, the trial court instructed the jury: " 'The defendant's duty to warn is a continuing one. It does not end when or if the defendant stops manufacturing or selling asbes-

tos. It does not stop when the plaintiff is no longer exposed to asbestos.'" *MCIC, Inc. v. Zenobia,* 86 Md.App. 456, 475, 587 A.2d 531 (1991) (*"Zenobia I"*), *rev'd on other grounds,* 325 Md. 420, 601 A.2d 633, *reconsideration denied,* 325 Md. 665, 602 A.2d 1182 (1992). On appeal, Owens–Illinois contended, as a matter of law, that it had no duty to warn of product hazards after it stopped manufacturing asbestos in 1958. The Court of Appeals rejected Owens–Illinois's argument.

In reaching its conclusion, the Court adopted the reasoning of the Supreme Court of Washington in *Lockwood v. AC & S, Inc.,* 109 Wash.2d 235, 744 P.2d 605 (1987). *Zenobia II,* 325 Md. at 448, 601 A.2d 633; *see Zenobia I,* 86 Md.App. at 475–76, 587 A.2d 531. In *Lockwood,* Albert Lockwood was employed in shipyards in the Puget Sound area from 1942 until he took a disability retirement in 1972. During that time, an asbestos-containing product manufactured by the corporate predecessor to Raymark Industries (Raymark) was used in the shipyards. In 1979, Lockwood was diagnosed with asbestosis. Thereafter, Lockwood and his wife initiated suit against Raymark and eighteen other defendants to recover for injuries he sustained from exposure to asbestos-containing products. A jury returned a verdict in favor of the Lockwoods. On appeal, Raymark argued that evidence of its knowledge of the hazards of asbestos acquired after Lockwood's last exposure was irrelevant, "because there was no continuing duty to warn Lockwood of the dangers of asbestos after he was no longer exposed to the product." *Lockwood,* 744 P.2d at 618.

In rejecting Raymark's position and affirming the relevance of the evidence, the Washington Supreme Court said:

We believe that where a person's susceptibility to the danger of a product continues after that person's direct exposure to the product has ceased, the manufacturer still has a duty after exposure to exercise reasonable care to warn the person of known dangers, if the warning could help to prevent or lessen the harm. Such a warning should be required to the extent practicable. Thus, it will depend on the circumstances if a warning to previous users of the product must be made by direct personal contact with such

users. Alternative warning methods which may be reasonable in a given situation might include notices to physicians or advertisements.

*Id.* at 619; *see Zenobia II,* 325 Md. at 448, 601 A.2d 633 (quoting *Lockwood* court's "caution[ ] that the 'warning should be required to the extent practicable' under the circumstances"); *cf. Godwin,* 340 Md. at 420, 667 A.2d 116 (discussing the admissibility of certain prior complaints in *Abate I* against defendant Pittsburgh Corning Corporation ("PCC") and concluding that "[t]he suits were admissible because they are relevant to the issue of notice, inasmuch as the duty to warn may continue after the time of sale").

The *Zenobia II* Court also quoted the following language from *Lockwood:*

"[W]e believe that if Raymark had made a reasonable effort to provide Lockwood with the information it acquired about the dangers of asbestos exposure after his retirement, the seriousness of his injury might have been reduced. Under these circumstances, Raymark had a continuing duty to warn Lockwood of the known dangers of its product after he was no longer exposed to it."

*Zenobia II,* 325 Md. at 448, 601 A.2d 633 (alteration in original) (quoting *Lockwood,* 744 P.2d at 619).

Building upon the *Lockwood* opinion, the Court said in *Zenobia II* that "[t]he fact that a manufacturer or seller has discontinued its asbestos product line, and the fact that the plaintiff was no longer exposed to its product, are not circumstances which should necessarily relieve the seller of its duty to warn." *Id.* Instead, the Court noted that "these factors are relevant to a determination of what reasonable efforts to discover the danger and to warn are required." *Id.*

*United States Gypsum Co. v. Mayor of Baltimore,* 336 Md. 145, 647 A.2d 405 (1994), is also instructive. There, the Court clarified the scope of the continuing duty to warn discussed in *Zenobia II.* In that case, the City of Baltimore (the "City") initiated suit against, *inter alia,* the Asbestospray Corporation ("Asbestospray"), a manufacturer and distributor of an asbes-

tos-containing fireproofing spray. Under alternative theories of negligence, strict liability, and breach of warranty, the City sought to recover damages relating to asbestos detection and abatement in its buildings, but made no claim for personal injury. The negligence and strict liability theories were premised on an alleged lack of adequate warnings in connection with the asbestos-containing products. *Id.* at 153 n. 2, 647 A.2d 405.

At the conclusion of the evidence, the circuit court instructed the jury as follows with respect to the negligence and strict liability claims:

"A manufacturer or seller also has a continuing duty to warn of product defects which the manufacturer or seller discovers after the time of sale. Therefore, if a manufacturer or a seller discovers a product defect after the time of sale, the manufacturer and/or the seller must make reasonable efforts to issue a post-sale warning if the warning would help to prevent or lessen the harm. The post-sale duty to warn requires reasonable efforts to inform users of the hazards once the manufacturer or seller is or should be aware of the need of a warning."

*Id.* at 158, 647 A.2d 405. The jury returned special verdicts in favor of the City and awarded both compensatory and punitive damages against Asbestospray.

On appeal, Asbestospray argued that the trial court erred by recognizing a post-sale continuing duty to warn in a suit involving only property damages, claiming that the duty arises only in personal injury actions. The Court of Appeals disagreed with that position, concluding that the duty to warn applied to both personal injury and property suits. *Id.* at 160, 647 A.2d 405. Moreover, the Court said that the post-sale duty to warn extends to "product defects discovered even long after the time of sale." *id.* at 162, 647 A.2d 405, and the duty "may arise even where the product was reasonably safe for use at the time of manufacture and sale." *Id.* at 160, 647 A.2d 405 (citing *Zenobia II,* 325 Md. at 446, 601 A.2d 633; *Rekab,* 261 Md. at 146, 274 A.2d 107). Moreover, the Court expressly

rejected the contention that a plaintiff's injury "is fixed upon the sale of the materials to the plaintiff, so that the failure to issue a post-sale warning can cause no additional injury." *Id.* at 161, 647 A.2d 405. The Court reasoned, 336 Md. at 161, 647 A.2d 405:

> [I]t is clear to us that, in an action for the cost of discovering, managing, rectifying the effects of, and removing asbestos-containing materials, the plaintiff's damages are not necessarily fixed upon sale or installation. A warning given after a manufacturer has released the product may, in some instances, come in time to avoid installation. More commonly, when the product has been distributed and installed before knowledge of the defect reasonably could be attributed to the manufacturer, a warning later given when knowledge becomes available may still effect a savings to the consumer, because the costs of removal, replacement, and cleaning will likely be less at that time than at a later time when the consumer learns of the defect.

It is apparent from *Zenobia II* and *U.S. Gypsum* that a continuing duty to warn may emanate from either a negligence or a strict liability theory. *See Zenobia II*, 325 Md. at 446–48, 601 A.2d 633 (recognizing continuing duty to warn in action sounding in strict liability); *U.S. Gypsum*, 336 Md. at 158–61, 647 A.2d 405 (affirming trial court's jury instruction with respect to negligence and strict liability counts on continuing duty to warn). *See generally Mazda Motor of Am., Inc. v. Rogowski*, 105 Md.App. 318, 325, 659 A.2d 391 (stating that negligence and strict liability claims for an alleged failure to warn bear "a strong resemblance" to one another and acknowledging that "[c]oncepts of duty, breach, causation, and damages are present in both"), *cert. denied*, 340 Md. 501, 667 A.2d 342 (1995).

As noted, the *Abate I* jury found that Porter Hayden was both negligent and strictly liable in connection with the manufacture, sale, distribution, or installation of asbestos-containing products as of 1956. These findings, which were rendered during the first of the four phases in *Abate I* ("Phase I"), applied to the cases of the six illustrative plaintiffs as well as

the 8,549 other plaintiffs. Phase II [9] of *Abate I* only resolved individual issues with respect to the six illustrative plaintiffs, including:

> (1) whether the plaintiff was a foreseeable user and/or bystander; (2) whether the plaintiff had contracted an asbestos-related disease and, in the wrongful death cases, whether that disease had caused the death; (3) the years, if any, during which the plaintiff was exposed to the products of specific defendants named in the special verdict form; and (4) for those defendants for which years of exposure were found under issue three, whether that exposure was a substantially contributing factor in causing the asbestos related disease and/or death.

*Godwin*, 340 Md. at 344–45, 667 A.2d 116 (footnote omitted).

At the hearing on appellee's motion for summary judgment, appellee submitted four transcript pages from a hearing on March 17, 1993, before Judge Levin, concerning *Abate I* mini-trials. The transcript contained the following:

> [PLAINTIFFS' COUNSEL]: Your Honor, if a plaintiff was exposed to products that are either distributed or being installed by [Porter Hayden] ... in 1950 or 1952, the fact that Porter–Hayden was found to be negligent as of 1956 means they have a continuing duty to warn those who had been previously exposed to their products.
>
> Therefore, exposures prior to 1956 are completely relevant in this case.
>
> Porter–Hayden can't come in here and claim that anything prior to 1956, that they did in terms of exposing people to products and causing disease is irrelevant.
>
> Their negligence and their liability under strict liability begins in 1956. That's when they should have been warning people who were being exposed at that time, and people who were previously exposed under their continuing duty to warn.

---

9. Phases III and IV addressed punitive damages and do not bear on this appeal.

And therefore, exposures prior to 1956 to products that are either distributed or being installed that contain asbestos under those conditions by [Porter Hayden] are relevant.

THE COURT: Go ahead, sir.

[DEFENDANT'S COUNSEL]: Let me note, Your Honor, that there was no finding on the jury verdict form or verdict sheet with respect to a continuing duty to warn.

It is my position that, during the time frame that there is a common-issues finding, it would be relevant during the time frame.

Before that point it would not be relevant. The product was not defective. There is no common issue for products prior to that date to be applied in this case.

THE COURT: I agree with you.

Appellant's counsel suggested at the January 1999 motion hearing that the duty to warn was subsumed in the jury's negligence finding and, as of 1956, appellee had a continuing duty to warn. The court seemed to consider the continuing duty to warn as a separate claim, and was apparently of the view that the issue was not litigated in *Abate I* and was therefore waived. The ensuing colloquy, which followed some discussion and references to *Zenobia II* and *U.S. Gypsum*, is relevant:

THE COURT: But you had your case against Porter Hayden and the jury has made the decision that it has made, and now you are saying absent th[e Stipulation] that we will get to in a minute that you go back and you get another shot at them because of a failure to warn. Is that what you are saying?

MR. CUNIFF: Yes.

\* \* \*

THE COURT: You only get one bite. The jury says no.

Now, if you had some other issues that should have been raised at that time, if, and I'm not saying that you did, but if, then that is when they should have been raised.

You can't try it piecemeal and seriatim against a defendant and keep coming back with another theory of liability.

MR. CUNIFF: Your Honor, you don't need another theory of liability. Negligence and strict liability have already been established as of 1956, 1956 forward.

THE COURT: You see, we are really going at cross purposes because I just cannot follow where you are coming from.

The jury says they are not responsible. Now you are saying oh, well, the jury said they are not responsible in 1954, but in 1957 they are responsible because they didn't warn.

MR. CUNIFF: Your Honor, I think it is a little different what the jury actually said.

The jury said that as of 1956 liability attached because at that date they knew. From that date forward they knew. From that date forward they had obligations to warn the people that had been exposed.

Additionally, as we indicated earlier, the court said in its oral opinion at the close of the motion hearing:

Even if you accept, as I guess one must, that there is a continuing duty to warn, I don't know what that means. I don't know if that means that Porter Hayden has to go back and warn the whole universe of people who might have been exposed to some of their products prior to a certain date, I don't know. *All I know is that in this case the jury said they weren't responsible.*

*I assume that it was never submitted to the jury. I don't know. I don't know this, whether it was submitted to the jury, the issue of a continuing duty to warn. If it wasn't, it is waived.*

(Emphasis added).

It is evident that, based on an assumption that the issue of a continuing duty to warn was not submitted to the jury in *Abate I,* the motion court construed the jury verdict and determined that a common issues plaintiff in *Abate I* is not

entitled to recover if the last exposure to a defendant's asbestos product occurred before the date of liability assigned by the jury as reflected on the *Abate I* verdict sheet. As to Pettiford, the operative date is 1945; as to appellee, that date is 1956.

On September 9, 1999, months after the motion hearing, and sixteen weeks after appellant noted this appeal on May 20, 1999, appellant submitted to the clerk a limited excerpt from the jury charge in *Abate I,* in an apparent effort to address the trial court's statement that it did not know if the *Abate I* jury was instructed on the continuing duty to warn. The accompanying letter of counsel said: "I have enclosed relevant portions of the jury charge in the consolidated trial for inclusion as part of the record so that you will not have to search for it elsewhere."

The four-page excerpt of instructions is included in the limited record before us and in the record extract. Additionally, both parties cite to the excerpt in their briefs. The excerpt makes clear that the *Abate I* jury was, indeed, instructed on the defendants' duty to warn and continuing duty to warn in connection with alleged negligence. The instruction follows:

Now, a manufacturer is not required to warn against dangers of which it did not know nor did it have reason to know.

But it is under a duty to warn of dangers of its asbestos-containing products if it does know or has reason to know that its products were likely to be dangerous for their reasonably foreseeable use.

Therefore, it is for you to decide whether a manufacturer is liable to end users or bystanders of the dangers of its asbestos-containing product.

You must determine when each defendant should have known of any danger from its asbestos-containing products.

Based on the state-of-the-art evidence and other evidence in this case, *you should determine the date, if any, on which each defendant came under a legal duty to warn users*

*and/or bystanders of any danger from the product it made or sold.*

Now, tomorrow, when I give you the issue sheets, you will see certain definitions. And I define user, and I define bystander.

And then there are certain questions asked of you which you can answer yes or no, and I will explain all this to you, and then you will put in certain dates, if indeed you do.

Let me continue. A warning is required to be reasonable under the circumstances. A warning is legally adequate when it gives the product user reasonable notice of the dangerous condition of the product.

A defendant can fulfill a legal duty to warn, if you find such a legal duty existed, by providing a legally adequate warning of the dangers of its product.

In determining the adequacy of a warning, you should consider whether the defendant has fully informed the consumer of the risk of an asbestos-containing product so as to enable the consumer to take precautions to avoid it or to make a decision not to encounter the product at all.

In this case, there is evidence that some defendants did place warning on their products. There is also evidence to the contrary.

You must first determine whether any warning was given and, if a warning was given, the date on which the warning was placed on the particular product to which each plaintiff was exposed.

Next, you should consider whether the warning was legally adequate. *Once you have determined the date, if any, that a defendant came under a legal duty to warn and the date upon which that legal duty was fulfilled by a legally adequate warning, if at all, you will know whether there was a period of time during which each defendant was negligent due to the failure to warn.*

*There is what we call a continuing duty to warn,* ladies and gentleman. A manufacturer of a defective product

generally has a duty to warn of product defects which the manufacturer discovers after the time of sale.

A manufacturer is obliged to reasonably communicate an effective warning, even after a sale of the product, based on later acquired knowledge of the danger as soon as it is reasonably foreseeable.

This post-sale duty to warn requires reasonable efforts to inform users of the danger once the manufacturer is or should be aware of the need for a warning. The warning should be required to the extent practicable under the circumstances.

Now, ladies and gentlemen, let me deal with strict liability. In addition to negligence, the plaintiffs are pursuing a claim for strict liability, that is, liability for defective and unreasonably dangerous products.

(Emphasis added).

Although it is apparent that the *Abate I* jury was instructed on the continuing duty to warn in connection with a negligence theory, the motion judge, as we noted, was not provided with these instructions. Certainly, the jury instructions would have been useful to the motion judge in construing the jury verdict in *Abate I*, or at least in recognizing that more information was needed to resolve the issue.

Our review of the Court's opinion in *Godwin* does not clarify for us exactly what the dates in *Abate I* were meant to represent. In connection with the appeal of *Abate I*, the Court of Appeals undertook an extensive review of a host of difficult issues resulting in an opinion approaching 100 pages in length. As best we can determine, however, ambiguity in the scope of the jury verdict with respect to a continuing duty to warn was not one of the issues. As explained by the Court of Appeals in *Godwin*, "[t]he Phase I issues involve[d] state of the art from the plaintiffs' standpoint." *Godwin*, 340 Md. at 395, 667 A.2d 116. In addressing the defendants' complaint that the consolidation for trial of the common issues deprived them of due process, the Court said:

In an asbestos products liability failure to warn action sounding in strict liability or negligence and brought against a manufacturer or a distributor-installer, a plaintiff must show that the defendant knew or should have known that distribution of the product involved an unreasonable risk of causing physical harm to the consumer. *See Owens–Illinois, Inc. v. Zenobia,* 325 Md. at 438–39 n. 8, 601 A.2d at 641–42 n. 8 (in a strict liability failure to warn case "the knowledge or state of the art component is an element to be proven by the plaintiff"); *Eagle–Picher [Indus., Inc.] v. Balbos,* 326 Md. [179,] 194–204, 604 A.2d [445,] 452–57 [ (1992) ]. Thus, absent the consolidation, each of the other 8,549 plaintiffs would be required to prove state of the art as to [the defendants, including PH] if they were defendants to that plaintiff's claim. The defendants submit that the 8,555 plaintiffs in the consolidation have different occupations, were exposed at different times, at different workplaces, have different diseases, and different medical histories. But none of these factors diminishes the commonality of the Phase I issues, *and the Phase I determinations are the only determinations that will be applied against the defendants-appellants at mini-trials of the other plaintiffs' actions.*

Issues involving a plaintiff's burden on state of the art in an asbestos products liability failure to warn case are particularly appropriate for consolidation. Absent unusual circumstances, it is senseless to repeat the presentation of the same evidence against the same defendants in successive, individual trials or mini-consolidations. After only a brief introduction to asbestos litigation one recognizes that the same medical studies, medical journal articles, workers' compensation claims, third-party suits, depositions of witnesses, transcripts of court testimony, minutes of meetings, correspondence, and other exhibits are produced against the same defendants in trial after trial throughout the nation.

*Id.* at 395–96, 667 A.2d 116 (emphasis added).

The Court went on to point out that the state of the art special verdicts rendered at the conclusion of Phase I were no

more adverse to the defendants than if the identical verdicts had been rendered in separate trials of the three successful illustrative plaintiffs. "In that hypothetical the same Phase I verdicts, when embodied in a final judgement, would give rise to issue preclusion or offensive, non-mutual, collateral estoppel," thus allowing any of the 8,549 common issue plaintiffs to invoke the Phase I findings as a bar to relitigation of the state-of-the-art issues resolved in *Abate I. Id.* at 397, 667 A.2d 116.

Under the guise of unconstitutionality, the defendants also argued there that they were prejudiced by the inclusion of bystander plaintiffs in the consolidation because their exposure "may be so remote that the defendant had no duty to warn that type of bystander based on what the defendant knew or should have known at the time." *Id.* at 404, 667 A.2d 116. Again unpersuaded, the Court responded:

Judge Levin's crafting of the common issues of Phase I versus the individual issues of Phase II addresses that concern. The first issue of Phase II is: "Do you find by a preponderance of the evidence that [name of the specific plaintiff] was a foreseeable user and/or bystander?" Phase II also requires a finding that a particular plaintiff was exposed to a product of a particular defendant. The next issue in Phase II asks, "Do you find by a preponderance of the evidence that the Plaintiff, [name of the particular plaintiff], proved that [named plaintiff or victim]'s *exposure to that defendant's asbestos-containing products at any time during the dates indicated was a substantial contributing factor in causing his asbestos-related disease and/or death?* " These are among the issues that will be submitted in forthcoming mini-trials. They accommodate the defendants' concerns. A defense based on remoteness of a particular bystander plaintiff is not foreclosed by the common issue findings in Phase I of the consolidation.

*Id.* (emphasis added).

Moreover, subsequent statements in *Godwin*, highlighted in our discussion of *Lockwood* in *Zenobia II*, indicate that the

Court recognized the continuing duty to warn in connection with the resolution of an appellate issue raised by defendant PCC. On appeal, PCC alleged that, in trying *Abate I*, the court erred in admitting two civil complaints filed by former PCC employees in the mid–1970s, several years' after PCC stopped manufacturing asbestos products. *Id.* at 420, 667 A.2d 116. The Court concluded, *inter alia*, that those "suits were admissible because they are relevant to the issue of notice, inasmuch as the duty to warn may continue after the time of sale." *Id.* (citing *Zenobia*, 325 Md. at 446–47, 601 A.2d 633, and *U.S. Gypsum*, 336 Md. at 160, 647 A.2d 405).

In *ACandS*, which was the appeal of *Abate II*, we noted that the common issues presented at trial included "whether the defendants had and violated any duty to warn of dangers inherent in the products." *ACandS*, 121 Md.App. at 602, 710 A.2d 944. On appeal, the defendants argued, *inter alia*, that the verdict sheets were "fatally defective." *Id.* at 627, 710 A.2d 944. We disagreed, noting that they demonstrated that, as to each defendant, the jury determined whether the defendant was negligent in manufacturing, selling, distributing, or installing each product, and whether the product that the defendant manufactured, sold, distributed, or installed was defective. *Id.* at 632, 710 A.2d 944. We also pointed out that if the jury answered in the affirmative, it then determined whether the trial plaintiffs were exposed to and damaged by the products in question, but the issues of liability for the common issue plaintiffs would be decided at the mini-trials. We also said: "The new juries will not be called upon to determine whether the defendants were negligent or whether any specific products were defective—those matters were determined by the *Abate II* jury." *Id.*

To be sure, we indicated that the mini-trials are not for the purpose of considering issues relating to whether the defendants were negligent or their products were defective, as those matters were already litigated. Therefore, it was never contemplated that a common issue plaintiff could pursue at the mini-trial whether a defendant breached a continuing duty to warn. Moreover, our *dicta* in *Abate II* arguably suggests that

we considered the dates assigned by the jury in *Abate II* as a line of demarcation; no liability attached when the last exposure to asbestos preceded the date assigned by the jury. On the other hand, the jury in that case was instructed on the continuing duty to warn, and the issue that we confront here was not specifically raised in the appeal of *Abate II.*

Accordingly, we conclude that the record presented to the motion court was inadequate to enable the court fully and fairly to construe the verdict in *Abate I.* Therefore, a remand is appropriate.

In ordering a remand, we do not suggest that the court's interpretation of the jury verdict will necessarily prove incorrect. Indeed, what the jury meant may ultimately come down to the court's best guess. Our concern, however, is that the court was not provided with adequate, relevant information that might have been gleaned from the *Abate I* trial to assist the court in determining whether the continuing duty to warn was included as part of the negligence or strict liability claim. For the purpose of the motion, the parties should submit information gleaned from their review of the record relevant to whether the issue of a continuing duty to warn was, indeed, raised by appellant as a basis for its claim and submitted to the jury for its consideration. Pertinent information could include the jury instructions, including those on the continuing duty to warn, the parties' theories of the case as evidenced by the record, discussions between counsel and the court about the verdict sheet, formulation of the questions used in the verdict sheet that are at the center of this dispute, jury summations elucidating the parties' understanding of the issues, pertinent portions of trial testimony and exhibits that might bear on the issue here, and post-verdict discussions between counsel and the court as to the jury's verdict and the parties' understanding of that verdict.

**JUDGMENT IN FAVOR OF APPELLEE VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS**

CONSISTENT WITH THIS OPINION. COSTS TO BE
PAID BY APPELLEE.